STATE of Wisconsin, Plaintiff-Respondent,†

v.

Winston D. JUDD, Defendant-Appellant.

Court of Appeals

*No. 88–0430–CR. Argued October 6, 1988.—Decided November 2, 1988.*

(Also reported in 433 N.W.2d 260.)

† Petition to review denied. BABLITCH, J., took no part.

On behalf of the defendant-appellant there were briefs and oral argument by *Mark Lukoff,* first assistant state public defender.

On behalf of the plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general and *Rustam A. Barbee,* assistant attorney general, with oral argument by *Rustam A. Barbee.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. This appeal involves interpretation of the Wisconsin Organized Crime Control Act (WOC-CA), secs. 946.80 through 946.87, Stats. Winston Judd seeks a reversal of his conviction on the basis that sec. 946.83(3), Stats., requires the "enterprise" to be separate from the "person" who is charged with conducting a pattern of racketeering activity through the enterprise. He alleges that the evidence is insufficient on this point. While we agree that the enterprise must be separate from the person, we conclude that sufficient evidence supports such a finding in this case. We therefore affirm Judd's conviction.

## FACTS

Judd was charged with participating directly in Cropmaster, Inc., through a pattern of racketeering activity involving theft by fraud from five individuals and the issuance of a worthless check to the sixth.

Each of the five theft victims contracted with Cropmaster, through Judd, for the purchase and erection of used silos. The silos were never delivered, and the five individuals never got their money back.

The worthless check victim had sold Judd a fire-damaged silo for $2400. Judd paid $100 down but the check for the balance bounced.

Judd was the president and sole owner of Cropmaster. Work crews performed necessary labor in erecting silos purchased through Cropmaster.

## WOCCA AND RICO

Section 946.83(3), Stats., under which Judd was charged, reads as follows:

> No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity.

"Racketeering activity" is defined in sec. 946.82(4), Stats., as the attempt, conspiracy to commit, or commission of any of a number of different felonies, including theft under sec. 943.20, Stats., and the issuance of a worthless check under sec. 943.24(2), Stats. A "pattern of racketeering activity" is defined in sec. 946.82(3) as at least three incidents of racketeering activity that are interrelated as specified by statute and that occurred within a certain time frame.

"Person" is not defined in WOCCA, but "enterprise" is defined in sec. 946.82(2), Stats., as follows:

> "Enterprise" means any sole proprietorship, partnership, corporation, business trust, union organized under the laws of this state or other legal entity or any union not organized under the laws of this state, association or group of individuals associated in fact although not a legal entity. "Enterprise" includes illicit and licit enterprises and governmental and other entities.

WOCCA was created by ch. 280, Laws of 1981. No state court decisions have previously interpreted the act. WOCCA was patterned, however, after the federal Racketeer Influenced and Corrupt Organizations Act (RICO). *See* Legislative Reference Bureau Analysis, 1981 S.B. 561. Thus, the voluminous federal law concerning RICO may be persuasive authority as to the interpretation of WOCCA. *See Gygi v. Guest,* 117 Wis. 2d 464, 467, 344 N.W.2d 214, 216 (Ct. App. 1984).

The federal counterpart to sec. 946.83(3), Stats., is 18 U.S.C. sec. 1962(c), which reads:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The federal definition of enterprise is in 18 U.S.C. sec. 1961(4):

> "[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

### "PERSON" AND "ENTERPRISE"

Judd argues that sec. 946.83(3), Stats., must be interpreted as is its federal equivalent, which requires the person to be separate from the enterprise. *See, e.g., Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747

F.2d 384, 400 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985).[1] We agree.

■

Both sec. 946.83(3), Stats., and 18 U.S.C. sec. 1962(c) require the person to be "employed by" or "associated with" the enterprise. "Thus, if we construed [this subsection] to permit the same entity to be both the person and the enterprise, we would reach the anomalous result that the entity was employed by or associated with itself." *United States v. DiCaro,* 772 F.2d 1314, 1319 (7th Cir. 1985), *cert. denied,* 475 U.S. 1081 (1986). In our view, sec. 946.83(3) can only be interpreted to require the person to be separate from the enterprise.

We therefore must turn to the question of whether Judd and Cropmaster were proven to be separate entities. The evidence is sufficient to support the verdict if we can conclude that the jury, acting reasonably, could be convinced to the required degree of certainty by evidence which it had a right to believe and accept as true. *State v. Teynor,* 141 Wis. 2d 187, 204, 414 N.W.2d 76, 82 (Ct. App. 1987).

Judd argues that he and Cropmaster are one and the same, and that the whole operation was a "one-man band." *See McCullough v. Suter,* 757 F.2d 142, 144 (7th Cir. 1985). As factual support, Judd points to the absence of testimony that Cropmaster had any employees. One member of the work crew merely testified that he worked for Judd.

---

[1]*Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985), is a civil case; however, the applicable law is identical to criminal RICO except for the different burden of proof. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 490–91 (1985).

The state's response if three-fold: (1) a corporation is a separate entity under ch. 180, Stats.; (2) the "one-man band" analysis of *McCullough* does not apply to a corporation; and (3) even if it does apply, Judd fails the "one-man band" test because of the other workers. At oral argument, the state categorized its argument somewhat differently, suggesting that a separate entity can be created either formally (by incorporating) or practically (by employing others). *See McCullough,* 757 F.2d at 144.

We adopt the state's position that a separate entity is formed by the act of incorporation, which entity constitutes an "enterprise" within the meaning of WOCCA. We base our conclusion on Wisconsin's statutory scheme and on existing federal law interpreting similar RICO provisions.

The state legislature has declared that one of the problems sought to be remedied by WOCCA is the "increasing extent to which criminal activities and funds acquired as a result of criminal activity are being directed to and against the legitimate economy of the state." Sec. 946.81, Stats. The federal congressional intent included the protection of legitimate business against infiltration by racketeers. *See United States v. Aleman,* 609 F.2d 298, 304 (7th Cir. 1979), *cert. denied,* 445 U.S. 946 (1980).

The facts of this case represent precisely the evil addressed by the legislature. Cropmaster was incorporated and, as such, acquired a legal status separate from its owners. *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.,* 27 Wis. 2d 112, 121, 133 N.W.2d 737, 743 (1965). Judd is now asking us to ignore the separate

legal status of Cropmaster and declare him to be its "alter ego." This we cannot do:

> [T]hose who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. *We do not consider it good policy to do so.*

*Id.* at 122, 133 N.W.2d at 744 (emphasis added) (citation omitted).

Nothing in federal law persuades us to the contrary. Judd cites to us such axioms as this: "[A]n organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself.... '[T]he whole is no different than the sum of its parts in this context.'" *Yellow Bus Lines, Inc. v. Local Union 639,* 839 F.2d 782, 791 (D.C. Cir.), *cert. denied,* 109 S. Ct. 309 (1988). However, this case, like others cited to us, involves a *corporate* defendant, not an individual defendant. While it is understandably difficult for a corporation to be associated with or employed by itself, *see id.,* it is not as illogical for Judd to be associated with Cropmaster, a separate legal entity of his own creation.

We have not found a federal case with facts parallel to ours. However, in *McCullough,* the defendant was an individual charged with being associated with his sole proprietorship and conducting its affairs through a pattern of racketeering activity. *McCullough,* 757 F.2d at 143. The fact that the defendant had several people working for him was sufficient to make his proprietorship an enterprise rather than a "one-man-band." *Id.* at 144. In dicta which we find to

be persuasive, the court went on to distinguish a "one-man band" from an incorporated "one-man band."

> It is true that if [the defendant] were all by himself, and yet adopted the corporate form for his activity, he might well fall under section 1962(c), for the corporation would be an enterprise within the meaning of section 1961(4).... If the one-man band incorporates, it gets some legal protections from the corporate form, such as limited liability; and it is just this sort of legal shield for illegal activity that RICO tries to pierce.

*Id.* The Ninth Circuit adopted this view in *United States v. Benny,* 786 F.2d 1410 (9th Cir.), *cert. denied,* 479 U.S. 1017 (1986). "The rule avoids the ontological conundrum of interpreting RICO to make liable an individual who associates with himself or herself, while it maintains at the same time RICO's ability to discourage and punish illegal activity associated with various groups." *Id.* at 1416. We conclude that, under WOCCA, an individual is separate from a solely-owned enterprise, as a matter of law, when that enterprise is a corporation.

The jury therefore had sufficient evidence before it to support its verdict that Judd was associated with Cropmaster and conducted its affairs through a pattern of racketeering activity. *See Teynor,* 141 Wis. 2d at 204, 414 N.W.2d at 82. We therefore affirm Judd's judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.