STATE of Wisconsin, Plaintiff-Appellant,

v.

Faith M. MANTHEY, Defendant-Respondent.†

Court of Appeals

*No. 91-2779-CR. Oral argument May 4, 1992.—Decided June 9, 1992.*

(Also reported in 487 N.W.2d 44.)

†Petition to review denied.

674

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *David J. Becker,* assistant attorney general, and orally argued by *David J. Becker.*

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gerald P. Boyle* and orally argued by *Wendy Patrickus* of *Gerald P. Boyle, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The state appeals an order dismissing four felony charges against Faith Manthey. The state contends that the trial court erred by determining that the state does not have additional evidence that would entitle it to reissue three charges pursuant to sec. 970.04, Stats., that had previously been dismissed. The state argues that the content of a recorded telephone conversation that was offered into evidence at the preliminary hearing but not used by the court in its decision is additional evidence that supports reissuing the charges. The state further argues that the new complaint is sufficient to support a finding of probable cause on the three charges. Finally, the state contends that the trial court erred by determining that the complaint did not estab-

lish probable cause to believe that Manthey committed the fourth charge, extortion, contrary to sec. 943.30(1), Stats.

We conclude that the content of the recorded telephone conversation is additional evidence within the meaning of sec. 970.04, Stats., entitling the state to reissue the solicitation of perjury charge. Next, we conclude that the complaint is sufficient with respect to the charges of solicitation of perjury and extortion. We conclude, however, that the state has failed to set forth sufficient facts to support the charges of solicitation of bribery of a witness and bribery of a witness. Because we conclude that these two charges cannot be supported by the facts alleged in the complaint, we do not consider the state's power to reissue them. Therefore, we affirm that portion of the order dismissing the charges of solicitation of bribery of a witness and bribery of a witness; reverse the portion of the order dismissing the charges of solicitation of perjury and extortion and remand with directions to reinstate these charges.

Manthey was originally charged with the following three offenses:

> 1. Soliciting another to commit the crime of bribery of a witness contrary to secs. 939.30 and 946.61, Stats.

> 2. Bribery of a witness, contrary to sec. 946.61, Stats.

> 3. Soliciting another to commit the crime of perjury, contrary to secs. 939.40 and 946.31, Stats.

These charges arose from the following series of events. Nancy Scott sued her divorce attorney for malpractice. Attorney Challoner Morse McBride represented the Scotts in the malpractice action. Faith Manthey, the real estate agent for Nancy at the time of the

divorce action, was asked to give a deposition for the malpractice action.

Otis Scott, Nancy's present husband, had a telephone conversation with Manthey concerning the deposition. Manthey indicated a reluctance to testify at the deposition. She suggested to Otis that he pay her money for her testimony through her sister so that she could testify honestly that she had received no money to testify on behalf of Nancy. Manthey also stated during this telephone conversation that she had a "convenient memory" and "could not remember everything" if she was not paid for her services. Manthey requested $500 as a deposition fee and an additional $500 for each appearance that she made. After receiving a subpoena to testify from another attorney in the litigation, Manthey contacted Attorney Morse McBride and again indicated that she was unwilling to testify unless she was paid.

Subsequently, Otis contacted the Door County Sheriff's Department. On May 10, 1990, Otis made a phone call to Manthey from the sheriff's department. The phone call was recorded and later transcribed. Various excerpts were included in the complaint, including the following:

> Mr. Otis Scott: . . . Won't you just testify honestly on our behalf without being paid for it?

> Defendant: Our buyer just made an offer tomorrow on a very expensive piece of property and I'm going to have to put that buyer off their [sic] not going to be very happy with me. I'm supposed to drop everything and come down there for you guys?

> Mr. Otis Scott: Well, its . . ..

> Defendant: No, I'm sorry, I spoke to an attorney and hey, I told you what I wanted along [sic] time ago and

678

I'm sorry to be hard-nosed about this, but either I'm paid to testify or I don't remember. . . .

**************

Mr. Otis Scott: I know but, I understand, did you get the subpoena?

Defendant: Yeah, I got subpoenaed. I'm not necessarily going to show up. . . .

**************

Mr. Otis Scott: Okay, so your [sic] saying that unless I pay you, you will not testify to the truth? All I want you to do is testify to the truth.

Defendant: I'll tell you exactly what you're going to hear from me. I don't remember, oh, I don't remember, gee I don't remember. If they can do it, I can do it.

Mr. Otis Scott: So you're going to have a convenient memory unless we pay you? Is that right?

Defendant: Yup. . . .

**************

Mr. Otis Scott: But you have to tell the truth.

Defendant: No, I don't have to.

Mr. Otis Scott: You don't have to tell the truth?

Defendant: Otis, I have a bad memory, ask anybody that knows me, I have a bad memory. . . .

**************

Defendant: No, I want a thousand dollars, which would be for the deposition and one other appearance. Any subsequent appearance would be five hundred per appearance.

679

Mr. Otis Scott: And if you don't get the thousand dollars, what? You won't say anything. Is that what you're saying, or what?

Defendant: I have a bad memory.

Mr. Otis Scott: You have a bad memory, O.K. How do you expect me to get you the thousand dollars?

Defendant: Whatever way you'd like, just so I have it before I'm set to be there before tomorrow morning.

Mr. Otis Scott: You want it before tomorrow morning?

Defendant: Ya, before I go there. . . .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Mr. Otis Scott: . . . Now, you did say one thing that you do have truthful evidence that can help us, right? You told me that you had.

Defendant: When I'm paid, you can help me remember anything you want me to remember.

Later that same day, Otis, with money provided by the sheriff's department, met Manthey at a restaurant and handed her $1,000. Otis told Manthey that he wanted her just to tell the truth at the deposition. Manthey asked Otis if there was anything in particular he would like her to say and if Otis could in any way jog her memory. Otis told Manthey that he just wanted her to testify truthfully. When Manthey left the restaurant she was arrested by a Door County Sheriff's deputy.

On July 26, 1990, a preliminary examination was held before Judge John D. Koehn. Attorney Morse McBride testified first. Her testimony related the conversation she had with Manthey in which Manthey inquired whether she had to respond to the subpoena and whether Otis was going to agree to do what she

demanded him to do. According to Morse McBride's testimony, Manthey indicated that Otis "knew what she wanted, that she had to have money or she was going to have a convenient memory lapse."

Otis testified next. Otis first described the April 20, 1990, conversation he had with Manthey regarding her potential testimony. He testified that Manthey did not want to testify, that she had had enough of this nonsense. He further testified that Manthey indicated that she had to be paid $500 for each appearance that she made and that if she were not paid she would have a convenient memory loss and would not remember anything.

The state then offered into evidence the transcript of the phone call that was made from the sheriff's department. Otis did not testify regarding the contents of this conversation. Instead, the next subject concerned the events that occurred in the restaurant. Regarding these, Otis testified that he gave Manthey the money. The district attorney then asked Otis whether Manthey said anything during this conversation and Otis answered: "Well, once, of course, the money passed hands she was very cooperative and said she would testify, and she even asked me if there was anything else that I wanted her to say. And I told her the only thing I want [sic] her to do was to go there, be on time, and to tell the whole truth and nothing but the truth, period." The state rested after Otis' testimony.

The defense's only witness was Nancy Scott. She testified that she had no conversations with Manthey regarding her testimony. She further testified that she was not present during any of the conversations between her husband and Manthey.

After argument, the court decided that bindover was appropriate. The court stated, "Without the transcript

[of the telephone call made from the sheriff's department] and the evidence contained in there, I'm finding that there is sufficient cause or there is probable cause."

An information was then filed charging the three counts set forth in the complaint. Subsequently, Manthey moved to dismiss on the ground that the complaint failed to set forth specific facts to establish probable cause to believe that Manthey committed the crimes charged in it.

At a hearing before Judge Dee R. Dyer, the court concluded that the motion to dismiss should be granted. The court concluded that the facts alleged in the complaint did not constitute a violation of the laws charged in the complaint and dismissed the complaint. Instead of appealing the court's decision, the state filed a new complaint.

In the second complaint, the state charged the same three counts and added a fourth. In addition to recharging the above three offenses, the second complaint charged:

4. Threatening to commit injury to the person, property, or business of another with intent to extort money, contrary to sec. 943.30(1), Stats.

Manthey filed a motion to dismiss the second complaint, alleging that the state could not reissue the three counts that had been alleged in the dismissed complaint, and that the facts alleged did not support a probable cause finding on the extortion charge.

Judge Koehn, presiding over this motion, granted the motion to dismiss. The court determined that the state did not offer additional evidence that would permit it to refile the first three counts of the complaint. In addition, the court found that the facts alleged did not constitute crimes under the statutes charged. This

appeal was taken from the order dismissing the second complaint.

The state argues that it was entitled to reissue the three charges enumerated in the first complaint pursuant to sec. 970.04, Stats., because it had additional evidence that was unused at the first preliminary examination. The resolution of this issue involves the interpretation of sec. 970.04 and its application to these particular facts. The interpretation and application of a statute to a particular set of facts present questions of law that we review de novo. *State v. Michels,* 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987).

Section 970.04, Stats., provides: "If a preliminary examination has been had and the defendant has been discharged, the district attorney may file another complaint if he has or discovers additional evidence." Here, the additional evidence the state seeks to introduce is the content of the recorded telephone conversation.

In this telephone conversation, Manthey made the following statement: "When I'm paid, you can help me remember anything you want me to remember." This statement raises an inference that Manthey was willing to perjure herself. Although another statement Manthey made in the restaurant that was evidence in the first preliminary hearing might have raised this inference, the statement in the recorded telephone conversation is stronger and more compelling evidence of Manthey's willingness to perjure herself on the stand. In addition, the recorded statement was given at a different time and place from the statement Manthey made in the restaurant. Consequently, we conclude that pursuant to sec. 970.04, Stats., the state was entitled to reissue the first solicitation of perjury charge because the recorded tele-

phone conversation contains additional evidence of that offense that was not admitted or used in the first preliminary examination. *See State v. Twaite,* 110 Wis. 2d 214, 220–21, 327 N.W.2d 700, 703 (1983).

Manthey argues that because the transcript was offered into evidence, it is not unused evidence under sec. 970.04, Stats. Although the transcript was offered, the trial court stated that without considering the transcript Manthey was bound over for trial. Under *Twaite,* such evidence is "unused" within the meaning of sec. 970.04.

In *Twaite* the court posed the issue as:

[W]hether the district attorney could reissue a criminal complaint on the ground that the chemist's testimony at the second examination, which was identical to his testimony at the first examination but which was not considered by the judge at the first preliminary, was new or unused evidence as required by section 970.04, Stats.

*Id.* at 218, 327 N.W.2d at 702. The court held that " 'unused' in the context of a preliminary hearing means unused by the court in reaching its decision whether to bind the defendant over for trial." *Id.* at 220, 327 N.W.2d at 703.

Therefore, based on *Twaite,* we reject Manthey's contention that because the transcript was offered into evidence it was used. Because the evidence was unused by the court in reaching its decision to bind Manthey over for trial, the evidence was additional in the context of sec. 970.04, Stats.

In addition to deciding that the state was not entitled to reissue the three charges previously dismissed,

the trial court concluded that none of the four charges in the second complaint was supported by probable cause. Therefore, we must next address the issue of the sufficiency of the complaint. The sufficiency of a complaint is a matter of law that we review de novo. *State v. Adams,* 152 Wis. 2d 68, 74, 447 N.W.2d 90, 92 (Ct. App. 1989).

The first two charges can be disposed of together. Manthey was charged with bribery of a witness and soliciting another to commit the crime of bribery of a witness. Section 946.61, Stats., makes the following conduct a felony:

> (1) Whoever ...
> (a) [w]ith intent to induce another to *refrain from giving evidence or testifying* in any civil or criminal matter before any court ... transfers to him or on his behalf, any property or any pecuniary advantage; or
> (b) Accepts any property or any pecuniary advantage, knowing that such property or pecuniary advantage was transferred to him or on his behalf with intent to induce him *to refrain from giving evidence or testifying* in any civil or criminal matter before any court .... (Emphasis added.)

The plain language of the statute makes it a crime to pay or accept inducement to *refrain* from testifying or giving evidence. Here, Manthey demanded payment and accepted payment in order to testify. The unambiguous language of the statute is inapplicable to this fact situation.

The state argues that we are required under *State v. Duda,* 60 Wis. 2d 431, 210 N.W.2d 763 (1973), to read the statute more broadly and to make it bribery of a witness where one *influences* another's testimony by use

of an inducement. We conclude that *Duda* does not support the state's position.

The issue presented here is distinct from the issue in *Duda*. The *Duda* court addressed the issue of whether the state had proved the requisite intent under sec. 946.61, Stats. In its analysis, the court analogized the crime of bribery of a witness to the crime of bribery of a public official. The court quoted language from the bribery of a public official statute and case law interpreting the statute that makes it a crime to pay a public official to *influence* his actions. By merely analogizing the two statutes, however, the court did not interpret the "refrain" language in sec. 946.61, Stats., to include *influencing* testimony. Therefore, *Duda* does not alter our conclusion that the plain language of the statute makes it a crime to pay a person only to *refrain* from testifying.

■
Our conclusion that the word "refrain" cannot be interpreted so broadly to include influencing testimony is consistent with the maxim of criminal law that criminal statutes are to be construed strictly to afford notice of what the criminal law prohibits. *State v. Clausen,* 105 Wis. 2d 231, 239–40, 313 N.W.2d 819, 923 (1982). An interpretation as broad as the state suggests casts the shadow of significant constitutional infirmities on the statute.

Next, we turn to the crime of soliciting another to commit the crime of perjury. Section 939.30(1), Stats., provides that "whoever, with intent that a felony be committed, advises another to commit that crime under circumstances that indicate unequivocally that he or she has the intent is guilty of a Class D felony."

■
Section 946.31(1), Stats., provides: "Whoever under oath or affirmation orally makes a false material state-

ment which the person does not believe to be true, in any matter, cause, action or proceeding, before [a court] . . . is guilty of a Class D felony." The question presented here is whether one can be guilty of solicitation of perjury where "A" solicits "B" to solicit "A" to commit perjury. This phenomenon is referred to as a "double inchoate crime." There is no question that under current Wisconsin law, "A" is guilty of solicitation if "A" advises "B" to procure "C" to commit a felony. *State v. Yee,* 160 Wis. 2d 15, 465 N.W.2d 260 (Ct. App. 1990).

Manthey argues that because there was no "C" in this case, *Yee* is inapplicable. We disagree. Manthey uses the same rationale to argue that there must be a "C," in this case as that relied on by the trial court in *Yee* and rejected by the appellate court. The trial court in *Yee* concluded that "the Yees' conduct did not fit within the definition of solicitation because they did not ask Corti to personally commit the crimes of aggravated battery or first-degree intentional homicide. In other words, because the Yees advised Corti to find someone else to commit these offenses, they did not advise Corti to commit the crimes." *Id.* at 17, 465 N.W.2d at 261.

The appellate court rejected this rationale. It stated:

> We conclude that the circuit court construed "to commit" too narrowly. Section 939.05, Stats., provides:
> (1)   Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.
> (2)   A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. . . .

Thus, had Corti procured another person to assault and kill Li as requested by the Yees, Corti would have been "[a] person . . . concerned" in the commission of the crimes of aggravated battery and first-degree intentional homicide. Therefore, the Yees advised Corti to commit the crimes of aggravated battery and first-degree intentional homicide by soliciting him to procure another person to commit those crimes.

*Id.* at 17, 465 N.W.2d at 261.

Here, under the *Yee* rationale, if Otis had agreed to pay or paid Manthey to commit perjury, he would have been a person "concerned" in the commission of the crime of perjury. Therefore, Manthey advised Otis to engage in the commission of the crime of perjury when she offered to commit perjury if he paid her. The *Yee* rationale, therefore, does not require the existence of "C."

Manthey also argues that her statement that she would testify to anything that Otis wanted her to, meant not that she would testify falsely, but rather that he should merely tell her the types of truthful things to which he wanted her to testify. Manthey merely presents one reasonable inference that can be drawn from the statement she made. However, it is equally reasonable to infer that she was willing to perjure herself on behalf of the Scotts if they asked her to do so. Where reasonable inferences may be drawn establishing probable cause and equally reasonable inferences may be drawn to the con-

trary, the criminal complaint is sufficient. *State ex rel. McCaffrey v. Shanks,* 124 Wis. 2d 216, 235, 369 N.W.2d 743, 754 (Ct. App. 1985). Because a reasonable inference can be drawn that Manthey was willing to perjure herself, we conclude that the charge of solicitation of perjury is supported by probable cause.

Finally, we address whether the facts alleged in the complaint constitute the crime of extortion. Section 943.30(1), Stats., provides in relevant part: "Whoever . . . verbally, maliciously . . . threatens or commits any injury to the property . . . of another, with intent thereby to extort money . . . is guilty of a Class D felony." The state presents this issue as whether a threat to withhold testimony in a lawsuit is a threat to the "property" of another.

First, we note that Manthey did not dispute at oral argument that an interest in a lawsuit qualifies as a property interest under sec. 943.30(1), Stats. Next, we note a lawsuit is a chose in action. *See Black's Law Dictionary* 219 (5th ed. 1979). The term property is sufficiently broad to encompass choses in action. *See Storm v. Cotzhausen,* 38 Wis. 139, 144 (1875); *see also Clawson v. State,* 129 Wis. 650, 654–55, 109 N.W. 578, 579 (1906). Therefore, we conclude that the term property as it is used in sec. 943.30(1), is broad enough to encompass an interest in a lawsuit.

Another jurisdiction considered this issue and reached the same conclusion in *Malley-Duff & Assocs. v. Crown Life Ins. Co.,* 792 F.2d 341 (3d Cir. 1986). In *Malley-Duff,* the court held that "allegations of 'great expenses, delays and inconvenience . . . in its prosecution of the First Lawsuit' were a sufficient pleading of injury to business or property to give Malley-Duff RICO standing." *Id.* at 355. The court reached this conclusion after

stating that "[a] cause of action, of course, is a form of 'property . . ..' " *Id.* at 354.

Because Manthey threatened to injure property by engaging in criminal conduct, i.e., by testifying falsely that she had no memory, unless she was paid, she falls within the purview of sec. 943.30(1), Stats. We do not decide, however, whether the threat to injure a person's property by engaging in noncriminal conduct unless paid is a crime under sec. 943.30(1). This issue is not before us and must be left for another day.

Manthey argues that the extortion charge fails on the basis that her intent was merely to be paid money to which she was legally entitled, not to injure the Scotts' lawsuit. The state, however, alleges that Manthey's intent was to injure the lawsuit by committing perjury by testifying that she had no memory of relevant facts. Again, because a reasonable inference can be drawn that Manthey intended to injure the Scotts' lawsuit, we conclude that the complaint is sufficient with regard to the extortion charge. *See McCaffrey,* 124 Wis. 2d at 236, 369 N.W.2d at 754. We also point out that it is not necessarily a defense to extortion that one believed he was legally entitled to the money. *O'Neil v. State,* 237 Wis. 391, 401, 296 N.W. 96, 100 (1941).

In sum, we conclude that the state was entitled to reissue the solicitation of perjury charge that was initially dismissed based on the additional evidence in the content of the recorded telephone conversation. The charges of bribery of a witness and solicitation of bribery of a witness fail because the facts do not support a claim that the conduct was to have a witness refrain from testifying. The charges of solicitation of perjury and extortion are supported by probable cause in the com-

690

plaint; therefore, we remand with directions to reinstate these charges.

*By the Court.*—Affirmed in part; reversed in part and cause remanded with directions.