STATE of Wisconsin, Plaintiff-Respondent,

v.

Janice L. O'CONNELL, Defendant-Appellant.†

Court of Appeals

*No. 92–1254–CR. Submitted on briefs May 6, 1993.—Decided October 7, 1993.*

(Also reported in 508 N.W.2d 23.)

†Petition to review denied.

599

602

For the defendant-appellant the cause was submitted on the briefs of *Randi L. Othrow* of McFarland.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Roy R. Korte*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. This is an appeal from a judgment of conviction for three counts of theft, one count of obtaining telecommunications service by fraud, and one count of participating in an enterprise through a pattern of racketeering activity. O'Connell asserts that: (1) the complaint charging a violation of the Wisconsin Organized Crime Control Act (WOCCA)[1] was deficient; (2) the trial court erred by failing to dismiss all but one theft count because the information was not timely filed; (3) the thefts were not committed as part of an "enterprise," preventing her conviction for racketeering; (4) WOCCA is unconstitutionally vague; (5) the trial court erroneously exercised its discretion by failing to grant a continuance; and (6) the evidence was insufficient to support her theft convictions. We find no error and affirm.

Janice O'Connell was a long-term employee of the State Historical Society of Wisconsin. She was an expert on antique dolls and jewelry. She and a volunteer at the historical society, Rodney DeFoe, lived together and began a business of buying and selling antiques. From about June 1988, until January 1990, DeFoe, with O'Connell's assistance, stole antiques from the society and sold them. O'Connell made per-

---

[1] *See* secs. 946.80 to 946.88, Stats.

603

sonal long distance calls which she charged to the historical society. A jury convicted her of the five crimes we have noted, and she appeals.

## SUFFICIENCY OF WOCCA COMPLAINT

We determine the sufficiency of a criminal complaint *de novo*. *State v. Manthey*, 169 Wis. 2d 673, 685, 487 N.W.2d 44, 49 (Ct. App. 1992). The function of a complaint is informative — to allege facts from which a reasonable person could conclude that the defendant probably committed a crime. *State v. Gilles*, 173 Wis. 2d 101, 117, 496 N.W.2d 133, 140 (Ct. App. 1992). A complaint is sufficient if it answers five questions: (1) Who is charged? (2) What is the person charged with? (3) When and where did the alleged offense take place? (4) Why is this particular person being charged? and (5) Who says so? or How reliable is the informant? *State v. Adams*, 152 Wis. 2d 68, 73-74, 447 N.W.2d 90, 92 (Ct. App. 1989). O'Connell asserts only that the complaint does not adequately explain why she is being charged. Specifically, she asserts that the complaint does not allege that she and DeFoe engaged in an "enterprise," an element of a WOCCA violation.

O'Connell asserts that the complaint fails to assert that the incidents of theft alleged were a regular way of conducting or participating in the conduct of the ongoing WOCCA enterprise. She claims that no facts show any infrastructure between her and DeFoe in support of a continuing relationship, or that they committed the predicate acts themselves.

Section 946.82(2), Stats., defines "enterprise":

> "Enterprise" means any sole proprietorship, partnership, corporation, business trust, union organized under the laws of this state or other legal

entity or any union not organized under the laws of this state, association or group of individuals associated in fact although not a legal entity. "Enterprise" includes illicit and licit enterprises and governmental and other entities.

The crime with which O'Connell was charged is defined in sec. 946.83(3), Stats.:

No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity.

The complaint is fifteen pages long. In part, it alleges that O'Connell and DeFoe lived together and, together, bought and sold antiques. O'Connell told a police detective that she and DeFoe had rented a storage shed in which to keep their collectible/antique property. She admitted that she and DeFoe normally dealt with seven named antique dealers and "other markets." The complaint alleges that DeFoe received money from antique dealers, and in particular, a check for $18,750 from an auction house for the sale of a doll. Within eight days of the date of that check, DeFoe, a person without gainful employment, wrote four checks to O'Connell totaling $10,757, which she deposited in her account. She and DeFoe discussed the prices they should charge for particular antiques. DeFoe and O'Connell brought items to another antique dealer and sold some of them. O'Connell received checks totaling $896.15. Jon and Helen Grimm purchased at least twelve dolls from O'Connell and DeFoe for $14,775. The dolls were owned by the State Historical Society.

A reasonable person, upon reading these facts, could conclude that O'Connell and DeFoe were running

an antique business. The complaint alleged that some of the business — the sale of stolen items — was criminal. But some of the business was legitimate. Buying and selling antiques and renting a storage shed for antiques is not criminal. Section 946.82(2), Stats., includes illicit and licit businesses in its definition of "enterprise." Nor does it matter whether the business was a partnership, a proprietorship or a corporation. The business needs no infrastructure to be an "enterprise." Nor does the statute require that the organization have a trade name. Even a "group of individuals associated in fact" is an "enterprise." A reasonable person could conclude from reading the complaint that O'Connell and DeFoe were engaging or participating in an enterprise.

O'Connell also asserts that the facts we have repeated here do not show a pattern of racketeering activity. Federal cases have discussed the definition of "pattern of racketeering activity" under the federal Racketeer Influenced and Corrupt Organizations Act (RICO).[2]

Federal case law interpreting RICO is persuasive authority in interpreting WOCCA. *State v. Judd*, 147 Wis. 2d 398, 401, 433 N.W.2d 260, 262 (Ct. App. 1988). Both O'Connell and the state cite *United States v. Riccobene*, 709 F.2d 214, 223-24 (3d Cir.), *cert. denied*, 464 U.S. 849 (1983), for its discussion of what constitutes a pattern of racketeering activity:

> [I]t is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of

---

[2] *See* 18 U.S.C. §§ 1961-1968.

> the acts charged as predicate racketeering offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement.

*Id.* (footnote omitted).

O'Connell argues: "The alleged criminal agenda of the so-called enterprise in the instant case did not extend beyond the commission of the individual predicate acts." But the enterprise did have an existence separate from O'Connell.

In *McCullough v. Suter*, 757 F.2d 142 (7th Cir. 1985), the court considered whether a sole proprietorship could be an enterprise with which its proprietor can be associated. The court concluded that a sole proprietorship with no employees could not come within RICO's embrace; but if the sole proprietor had employees or associates, the enterprise would be a distinct entity apart from the sole proprietor. *Id.* at 144. DeFoe and O'Connell were partners or an association engaging in the antique business. Neither was the same as the association or partnership. There was a difference between O'Connell, when she was committing crimes, and the partnership or organization, when it was buying antiques and renting storage space. The disposition of the stolen goods was conducted within the business. This is the infiltration of legitimate business with racketeering money that WOCCA was designed to combat. We conclude that the complaint alleged sufficient facts from which a reasonable person could determine why O'Connell was being charged under WOCCA.

## UNTIMELY FILING OF INFORMATION

Section 971.01(2), Stats., provides:

> The information shall be filed with the clerk within 30 days after the completion of the preliminary examination or waiver thereof except that the district attorney may move the court wherein the information is to be filed for an order extending the period for filing such information for cause. Notice of such motion shall be given the defendant. Failure to file the information within such time shall entitle the defendant to have the action dismissed without prejudice.

The preliminary examination was held August 14, 1990. At the end of O'Connell's preliminary examination, the court heard O'Connell's motion to dismiss and concluded that it wanted briefs on whether the state had proved the existence of an enterprise, one of the elements of the state's WOCCA charge. The following exchange then took place:

> [State]: Your Honor, what I would request is that all dates — [interruption] — that all dates including the necessary date for filing of the information be delayed by order of the Court to start running as of the date of the decision.
>
> The Court: That makes sense.
>
> [DeFoe's Counsel]: Then we don't have to worry about motions until the arraignment.

On September 4, 1990, the court denied O'Connell's motion. The district attorney filed the information on September 17, 1990. O'Connell asserts that this is four days late, and that she is entitled to have the action dismissed without prejudice.

We conclude that O'Connell is not so entitled. She argues that she must expressly agree to a waiver of the sec. 971.01(2), Stats., thirty-day filing requirement. But she cites no authority for this position, and sec. 971.01(2) does not require a defendant to personally waive the thirty-day filing requirement. We do not consider undeveloped arguments. *State v. Gulrud,* 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142-43 (Ct. App. 1987). O'Connell also asserts that the court did not find cause to extend the thirty-day filing period. But the court extended the time because it had taken a motion to dismiss under consideration. There would have been little sense in requiring an information to be filed as to a count which might be dismissed. O'Connell also contends that because the district attorney's motion to extend the thirty-day period was not in writing, as required by sec. 971.30, Stats., the motion was ineffective. But sec. 802.01(2), Stats., made applicable to criminal proceedings by sec. 972.11(1), Stats., permits oral motions to be made during a hearing or trial. Finally, O'Connell asserts that the thirty-day filing period was extended only as to the WOCCA count. The discussion between counsel and the court that we have quoted shows this to be incorrect.

## ENTERPRISE NOT SEPARATE FROM DEFENDANT

O'Connell attacks the sufficiency of the evidence to convict her on the WOCCA charge.

> In testing the sufficiency of the evidence, an appellate court will not substitute its judgment for that of the jury unless, under all of the evidence presented, the jury could not have found guilt

beyond a reasonable doubt. If any possibility exists that the jury could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we will not overturn a verdict.

*State v. Rundle*, 176 Wis. 2d 985, 1005-06, 500 N.W.2d 916, 924 (1993).

Much of what we have said regarding O'Connell's attack on the complaint is also applicable here. However, we must now consider the state's proof at trial to determine whether the jury could have found guilt beyond a reasonable doubt.

Again, O'Connell contends that there was no criminal "enterprise." She asserts that all that existed was two individuals who lived together and committed a single crime of theft from the historical society. She sees no difference between the enterprise and the pattern of racketeering activity. But the evidence shows a different picture.

While we have noted that WOCCA is similar to RICO, the Wisconsin variation has defined "enterprise," "pattern of racketeering activity" and "racketeering activity" in sec. 946.82, Stats. Thus, while the federal courts have discussed those terms, and similar terms, and those discussions are helpful, the real test under an attack on sufficiency of evidence is whether, under Wisconsin's definition of those terms, defendant's guilt has been proven.

The "enterprise," which O'Connell claims was nonexistent, was an antique business. O'Connell admitted to a police detective that she and DeFoe were in the business of dealing in antiques. An antique dealer testified that DeFoe took an item to show to O'Connell, but when he returned, he did not buy the item because "she said we didn't want to get it." O'Connell approved the price on an item that she and DeFoe sold. Several

antique dealers, who were acquainted with DeFoe and O'Connell, felt that their business was a joint effort. In O'Connell's presence, DeFoe told an antique dealer: "We have these dolls we want to sell." Though they had no business card, DeFoe wrote both his and O'Connell's names on a piece of paper when asked for a business card. A dealer testified that from September 1989, until January 1990, DeFoe and O'Connell came to her gallery at least once or twice a month. She concluded that they were in business because "[t]hey were always saying that they [were] buying or they were selling dolls or pottery." An employee of the historical society testified that O'Connell had told her: "We had made a big sale." O'Connell wrote a note to an editor and researcher at the historical society which read in part: "Rod may have told you that we have a fine French doll on consignment for the next Theriault's auction . . . ."

That editor and researcher also testified that he had known O'Connell for over thirty years, and had worked with her at the historical society for about fifteen years. He identified her as one of the brightest persons he had ever worked with. She had an excellent memory and was expert in some areas of antiques. She was a formidable advocate for what she considered the proper path. He believed that DeFoe, on the other hand, did not have nearly O'Connell's knowledge in the field of antiques. But he was trying to learn.

O'Connell's brief chronicles the evidence the state produced. She admits that several witnesses had the impression or felt that there was a business enterprise. Nonetheless, she asserts that there was no real evidence that either DeFoe or O'Connell made decisions on behalf of the enterprise. She concludes that the reasonable inference was that she had a personal relationship with DeFoe, and that perhaps, DeFoe was

relying on O'Connell's expertise to make decisions about the prices of antiques.

O'Connell's brief-in-chief does not consider the standard by which we review attacks on evidence sufficiency. As a result, she focuses on the inferences that she believes the jury ought to have drawn. She views the enterprise as DeFoe's venture, and she argues that because DeFoe did most of the talking to dealers, that she cannot be found to have had anything much to do with the business. Perhaps a jury could have accepted her assertion that she was not much more than a passive bystander. But that test is the reverse of the one we use. The correct test is whether there is a reasonable possibility that the jury could have drawn its guilty verdict from the evidence presented. The evidence we have repeated is more than sufficient to meet this test. The antique business that O'Connell and DeFoe ran could easily be found to be an ongoing organization with a framework much like a partnership, in which decisions were arrived at by consensus.

O'Connell cites a variety of federal cases from which she concludes that RICO, and inferentially, WOCCA, were designed to attack Mafia-like racketeering. She asserts that the antique business had no continuity, no framework or superstructure, and no distinguishing characteristics. She contends that the result of this is that the required "enterprise" is no different from her. She concludes that small operations, such as the historical society thefts, are outside of WOCCA's ambit. But the legislature has addressed this issue. Section 946.81, Stats., provides: "It is not the intent of the legislature that isolated incidents of misdemeanor conduct be prosecuted under this act, but only an interrelated pattern of criminal activity the motive or effect of which is to derive pecuniary gain."

O'Connell's thefts are by no means isolated incidents of misdemeanor conduct. And, we addressed a similar argument in *Judd*, 147 Wis. 2d at 398, 433 N.W.2d at 260. In *Judd*, a single individual, apparently the sole shareholder of a corporation, defrauded the purchasers of five used silos and issued a worthless check to a sixth. Judd argued that he was a " 'one-man band' " and, therefore, not subject to WOCCA. *Id.* at 402, 433 N.W.2d at 262 (quoting *McCullough*, 757 F.2d at 144). We said: "The facts of this case represent precisely the evil addressed by the legislature." *Id.* at 403, 433 N.W.2d at 263.

If one person fraudulently selling five used silos is the sort of organization WOCCA was designed to combat, there is no question that O'Connell and DeFoe's thefts from the historical society over an eighteen-month period are also the type of evil addressed by WOCCA. If the defendant and his corporation in *Judd* constituted an "enterprise" apart from the defendant himself, then O'Connell and the antique business she and DeFoe operated must also be separate entities. We reject O'Connell's assertion that the enterprise was not separate from her person.

## WOCCA UNCONSTITUTIONALLY VAGUE

O'Connell asserts that WOCCA's definition of "pattern of racketeering activity" is unconstitutionally vague. In particular, she alleges that the word "pattern" in this phrase has no meaning. She takes this argument from Justice Scalia's concurring opinion in *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). Justice Scalia said:

613

It is clear to me from the prologue of the statute, which describes a relatively narrow focus upon "organized crime," that the word "pattern" in the phrase "pattern of racketeering activity" was meant to import some requirement beyond the mere existence of multiple predicate acts. . . . But what that something more is, is beyond me.

*Id.* at 255 (citation omitted).

■■■

" '[U]nless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid.' " *Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 905, 498 N.W.2d 826, 836 (1993) (quoting *Williams v. Hofmann*, 66 Wis. 2d 145, 153, 223 N.W.2d 844, 847-48 (1974)). Section 946.82(3), Stats., defines "pattern of racketeering activity":

"Pattern of racketeering activity" means engaging in at least 3 incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, provided at least one of the incidents occurred after April 27, 1982 and that the last of the incidents occurred within 7 years after the first incident of racketeering activity. Acts occurring at the same time and place which may form the basis for crimes punishable under more than one statutory provision may count for only one incident of racketeering activity.

Justice Scalia was joined by three justices in his concurrence. A majority of the court decided *H. J. Inc.* on a statutory basis, and did not discuss the constitutional issue. Like most minority opinions, Justice Scalia's concurrence is not what the law is, but what it

614

is not. Had even one justice in the majority agreed with the concurrence, that would now be the law. But it is not. O'Connell does not cite any case subsequent to *H. J. Inc.* which adopts the position of the concurrence in that case. And in *United States v. Sanders*, 962 F.2d 660, 678 (7th Cir.), *cert. denied*, 113 S. Ct. 262 (1992), the court rejected a vagueness challenge to RICO's "pattern of racketeering activity" requirement.

WOCCA defines "pattern of racketeering activity" as three or more incidents of racketeering activity which have the same or similar intents, results, accomplices, victims or methods of commission. Section 946.82(3), Stats. The historical society thefts fit all of these definitions, though that is unnecessary because the statute is worded in the disjunctive. The intent in all of the thefts was to steal antique items and convert them to cash. The results were receipts of cash. DeFoe and O'Connell were accomplices in all thefts. The only victim was the historical society, and the method of commission of the thefts was the use of O'Connell's reputation to obtain access to the places where the antiques were kept. Certainly on its face, and as applied to the facts of this case, the WOCCA definition of "pattern of racketeering activity" is not unconstitutionally vague.

## CONTINUANCE

After the state rested, O'Connell called DeFoe as a witness. Both the court and the state's attorney informed DeFoe of the risks he faced in testifying. DeFoe was permitted to call his attorney, and after doing so, he decided that he did not want to testify. O'Connell did not attempt to force him to do so. The

trial court then asked the parties what they wanted to do. O'Connell's attorney said:

> Judge, in light of the fact that we went until 9:30 last night, and I am extremely tired, and we have been going since 8:30 this morning, I don't think it's fair to the defense, to the jury, to the State, either, for that matter[,] to proceed here.
>
> In light of the fact that it does not appear that there is going to be any problem with what the Court set forth in the previous schedule, I would respectfully request that we adjourn until tomorrow morning.

The state noted that it did not oppose the motion.

We will not reverse a trial court's ruling on a motion for continuance unless we conclude that the trial court erroneously exercised its discretion. *State v. Echols*, 175 Wis. 2d 653, 680, 499 N.W.2d 631, 640 (1993), *cert. denied*, 114 S. Ct. 246 (1993). "On review, we must balance the defendant's right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice." *Id.*

O'Connell's motion was made just prior to 6:00 p.m. on Thursday, March 21, 1991. The trial court gave reasons for denying her motion. The judge was not going to be in court the next week, and had planned to leave on Saturday. But, the court explained, that plan could be canceled, and this was not a primary reason for denying the motion for a continuance. The court noted that O'Connell had testified at a motion, so that she was prepared to be a witness, and that she had taken detailed notes of what witnesses had said at trial. The court believed that if O'Connell testified, or called DeFoe as a witness, that the testimony and ensuing rebuttal would be lengthy. An adjournment

would make it impossible to get the trial done before Sunday. The court was also concerned that if an adjournment were granted, O'Connell might coerce DeFoe into testifying.

O'Connell does not assert that she would have testified had the case been adjourned. Once DeFoe decided not to testify, O'Connell was faced with the decision whether or not to testify. Since long before the trial began, O'Connell and her attorney had considered that question. Her decision could have been made in the one-hour continuance the court granted. O'Connell does not explain in what way the court's refusal to grant a continuance affected the quality of assistance her counsel provided, and we find nothing on that subject in the record. We conclude that the trial court did not erroneously exercise its discretion when it denied O'Connell's motion for a continuance.

## SUFFICIENCY OF EVIDENCE — THEFT

Counts two, three and four of the complaint alleged that O'Connell stole a watch, a perfume bottle and a pottery bowl. O'Connell asserts that the evidence only showed that she was intelligent, that she lived with DeFoe, and she may have been around when he stole and sold historical society artifacts. But, again, O'Connell does not apply the proper standard of review for evidence sufficiency. As an example, she argues: "When she [O'Connell] asked 'what did we pay for this or that' [she] may simply [have] mean[t] that she did not know how much DeFoe paid for an item. It was not necessarily a lie on her part." But, continuing the example, O'Connell is repeating an argument that should be made to a jury. Though "what did we pay for this" was not necessarily a lie, the jury was entitled to

617

believe that O'Connell's use of the pronoun "we" was an acknowledgment that she and DeFoe were partners in their illegal scheme. We will examine the evidence to determine whether a reasonable jury could conclude that O'Connell stole the three items.

O'Connell was charged in all three counts with being party to the crime of theft. *See* sec. 939.05, Stats. Thus, the state did not have to show that O'Connell was the thief. She could be found guilty if she directly committed the crimes, if she aided or abetted DeFoe in committing the crimes, if she was a party to a conspiracy with DeFoe to commit the crimes, or if she advised, hired, counseled or otherwise procured DeFoe to commit the crimes. *Id.*

O'Connell does not dispute that DeFoe stole the three items of property from the historical society. She had access to a vault where the stolen items were stored. DeFoe did not have that access. Her fingerprint was found on a display case which had been substituted for a display case where the stolen watch had been stored. She was observed with a display case identical or very similar to the case which had contained the stolen watch. Many persons testified that O'Connell and DeFoe appeared to be partners in the antique business. O'Connell and DeFoe sold the watch to an antique dealer in Mazomanie. Both were present when DeFoe told the dealer that "they" had bought the watch at a sale in Maple Bluff. Two checks were made out to O'Connell.

A University of Wisconsin employee testified that she purchased two perfume bottles from O'Connell and DeFoe. O'Connell had the bottles on her person when she came to the purchaser's home. She explained the significance of markings on the bottles. O'Connell explained that the bottles were quite tarnished when

she got them, but that she had cleaned them. The purchaser felt that DeFoe and O'Connell were in business together.

DeFoe took a stolen pottery bowl to the owner of a gallery on Monroe Street in Madison. The gallery owner would not accept the bowl on consignment because she was uncomfortable with keeping a very expensive bowl on her premises. Later, she called DeFoe on the telephone, but he was not at home. She asked O'Connell to obtain pictures of the pot, and give her its dimensions and markings, so that the gallery owner could attempt to market the pot. O'Connell did so. The gallery owner understood that DeFoe and O'Connell were in the antique business together because "they" were always buying and selling.

██

The jury might have rejected this testimony, as O'Connell argues it should have done. But it did not, and on review, we determine only whether a reasonable jury could have concluded that this evidence convinced them, beyond a reasonable doubt, that O'Connell was involved in the thefts of the three items. As we have noted, this evidence need not show that O'Connell stole the items, but only that she participated in the thefts in a way permitted by sec. 939.05, Stats. Theft is defined not only as the act of removing property from an owner, but also the unlawful use, concealment, transfer or retaining of possession of property. Section 943.20(1), Stats. A reasonable jury could have concluded that O'Connell assisted DeFoe in either the taking of the stolen items, or their disposition. Therefore, the evidence was sufficient to convict O'Connell of the theft of the three items.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring*). I concur in our mandate. However, I do so with some trepidation because the United States Supreme Court has clearly signalled that RICO's definition of "pattern of racketeering activity" may be void for vagueness. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 251 (1989) (Scalia, J., concurring). The definition of "pattern of racketeering activity" contained in sec. 946.82(3), Stats. (WOCCA), applies the same standard as RICO. *See Brunswick Corp., Mercury Marine Div. v. E.A. Doyle Mfg. Co.*, 770 F. Supp. 1351, 1363 (E.D. Wis. 1991). *See also State v. Judd*, 147 Wis. 2d 398, 400-01, 433 N.W.2d 260, 261-62 (Ct. App. 1988).

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the Court gave lower courts the following four clues as to the meaning of the enigmatic term "pattern of racketeering activity" in RICO. First, the definition implies "that while two acts are necessary, they may not be sufficient." *Sedima*, 473 U.S. at 496 n.14. Second, "two isolated acts," "sporadic activity," and "proof of two acts of racketeering activity, without more" would not be enough to constitute a pattern. *Id.* Third, "[i]t is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (emphasis in original). Finally, the Court directed lower courts' attention to 18 U.S.C. § 3575(e), which defined the term "pattern of conduct which was criminal," used in a different title of the same Act, and instructed that "[t]his language may be useful in interpreting other sections of the [RICO] Act." 473 U.S. at 496 n.14.[1]

---

[1] In a civil RICO action, the 7th Circuit Court of Appeals found the phrase "continuity and relationship" "to be somewhat elastic." *Management Computer Serv., Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 51 (7th Cir. 1989). The court did not, however, address whether RICO's pattern requirement was

Justice Scalia points out in his concurrence in *H.J. Inc.* that the district courts and courts of appeals "promptly produced the widest and most persistent Circuit split on an issue of federal law in recent memory." 492 U.S. at 251. Justice Scalia stated that: "This [standard] seems to me about as helpful to the conduct of [the lower courts'] affairs as 'life is a fountain.' " *Id.* at 252. Justice Scalia concluded:

> No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented.

*Id.* at 255-56.

That constitutional challenge to the clarity of "pattern of racketeering activity" has been raised in the present case. I do not believe that the fact that WOCCA requires three predicate acts rather than two can alter the constitutional result. *See* sec. 946.82(3), Stats.

In a symposium on RICO, Robert D. Luskin, Vice-Chairman, RICO Committee, Criminal Justice Section of the American Bar Association, wrote an article titled *Behold, The Day of Judgment: Is the RICO Pattern Requirement Void for Vagueness?* , 64 St. John's L. Rev. 779 (1990). He concluded: "It is difficult to escape the conclusion that the day of reckoning for vagueness challenges to RICO dawns." *Id.* at 796.

However, in the foreword to the symposium, Professor G. Robert Blakey "debunked" Luskin's "myth" as follows:

unconstitutionally "elastic." The court found that defendant's conduct could not in common sense be called a pattern of racketeering.

> At bottom, . . . the Luskin essay is unsatisfying
> . . . . Luskin conflates breadth, ambiguity, and
> vagueness. As such, he confuses that kind of uncer-
> tainty of application that stems from breadth of
> meaning caused by the use of broad terms, that kind
> of uncertainty of application that stems from multi-
> plicity of meaning caused by ambiguity, and that
> kind of impossibility of application that stems from
> vagueness caused by the use of terms having no
> meaning at all. In fact, RICO is neither ambiguous
> nor vague; it is broad, and breadth raises a question
> of policy, not constitutionality.

*Debunking RICO's Myriad Myths*, 64 St. John's L. Rev.
701, 718-19 (1990).

The majority in *H.J. Inc.* concluded that a pattern
of racketeering was established where there was "con-
tinuity plus relationship." The majority in *H.J. Inc.* did
not reach the question whether RICO's "pattern" defi-
nition is void for vagueness. However, Justice Brennan
stated that the definition of "pattern of racketeering
activity" "places an outer limit on the concept of a pat-
tern of racketeering activity that is broad indeed." 492
U.S. at 237. Thus, it appears possible that when a con-
stitutional attack on RICO's pattern requirement
reaches the U.S. Supreme Court, there may be more
than the four concurring justices' votes to strike RICO's
definition of "pattern of racketeering activity" for
vagueness.[2]

---

[2] *See* Note, "Mother of Mercy—Is This The End of RICO?"—
*Justice Scalia Invites Constitutional Void-for-Vagueness Chal-
lenge to RICO "Pattern,"* 65 Notre Dame L. Rev. 1106 (1990).
The title to this Note requires explaining. "Rico" was "Little
Caesar" in the 1931 film of the same name. As he lies dying, Rico
utters one of the most famous end lines in film history: "Mother
of Mercy—is this the end of Rico?" *See also* 64 St. John's L. Rev.
at 701-02.

Justice Scalia may have intended to warn Congress that it should more precisely define "pattern of racketeering activity." Justice Brennan, speaking for the majority in *H.J. Inc.*, said that: "RICO may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court." 492 U.S. at 249. Thus, the majority in *H.J. Inc.* may likewise have intended to warn Congress that it had better redefine "pattern of racketeering activity." In another article in the St. John's RICO symposium, J. Nonna and M. Corrado, *RICO Reform: "Weeding Out" Garden Variety Disputes Under the Racketeer Influenced and Corrupt Organizations Act*, 64 St. John's L. Rev. 825, 843 (1990), the authors state that: "An amendment to RICO which codifies the relatedness and continuity requirements is necessary." In view of the serious danger that the U.S. Supreme Court will hold that RICO's definition of "pattern of racketeering activity" is void for vagueness, I suggest that the legislature may wish to consider an amendment to sec. 946.82(3), Stats., which will more precisely define "pattern of racketeering activity."