AUSTIN, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–389–CR. Submitted on briefs October 4, 1978.—Decided November 28, 1978.*
(Also reported in 271 N.W.2d 668.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *David J. Becker*, assistant attorney general.

WILLIAM G. CALLOW, J.  Bobby Earl Austin (hereinafter the defendant) was convicted following a jury trial of one count of first-degree murder, contrary to sec. 940.01, Stats.; one count of attempted first-degree murder, contrary to secs. 940.01 and 939.32; and one count of armed robbery, contrary to sec. 943.32(1)(b) and (2).  He was sentenced to the mandatory term of life imprisonment for first-degree murder and concurrent terms of 15 and 7 years for the attempted first-degree murder and armed robbery, respectively.  On review the defendant challenges the attempted murder and armed robbery convictions.

We decline to apply the so-called concurrent sentence doctrine to bar our review of these convictions, and we hold that on these facts the defendant's belief that he was recovering his own money did not preclude his conviction for armed robbery and that there is no statutory or constitutional bar to the defendant's conviction for both murder and attempted murder.

On July 25, 1975, the defendant smoked marijuana, injected heroin, and drank an undetermined amount of wine and beer.  That afternoon he joined a dice game at a local tavern in Racine.  Later in the afternoon, Kenny Simmons and Berlyn Funderburg joined the game, and Funderburg began winning consistently.  After the defendant found that Funderburg had been playing with loaded dice, he demanded that Funderburg return the

money he had lost in the dice game, but Funderburg refused.

The defendant then went to the home of a friend, took a shotgun, and loaded it. He then returned to the site of the dice game. After demanding but not recovering money there, he traced down Funderburg. Funderburg approached defendant's car. The defendant got out of the car with the shotgun pointed down, and told Funderburg to return the money lost in the dice game. Funderburg took money out of his pocket, and the defendant took it. The defendant then noticed Kenny Simmons, turned and said either "You next Kenny boy" or something to the effect "I'm going to blow you away." In turning towards Simmons, the defendant either pointed the shotgun upwards or directly at Simmons, and the shotgun discharged. The blast only slightly injured Simmons but killed Willie Wortham, a friend of the defendant's who happened to be standing near Simmons at the time. Later that night the defendant turned himself in to the police.

On the basis of this evidence, the jury returned a verdict of guilty of murder, attempted murder, and armed robbery. The defendant seeks review by writ of error of the judgments of conviction for attempted murder and armed robbery.

There are three issues:

(1) Should this court decline to review the attempted murder and armed robbery convictions because the sentences for these run concurrently with the sentence for the defendant's unchallenged murder conviction?

(2) Does the defendant's belief that he was seeking to recover money which was cheated from him bar his conviction for armed robbery?

(3) Is there a statutory or constitutional bar to the defendant's conviction of both murder and attempted murder?

## THE CONCURRENT SENTENCE DOCTRINE

The concurrent sentence doctrine is a means by which federal courts have declined to review convictions where the sentences run concurrently with the sentence for a valid conviction. *See, e.g., Benton v. Maryland,* 395 U.S. 784, 791 (1969) ; *Hirabayashi v. United States,* 320 U.S. 81, 85 (1943) ; *United States v. Hamilton,* 420 F.2d 1096, 1099 (7th Cir. 1970). We have never adopted that doctrine, and we twice specifically refused to apply it where the companion conviction has not been affirmed on appeal. *Peasley v. State,* 83 Wis.2d 224, 265 N.W.2d 506 (1978) ; *Blaszke v. State,* 69 Wis.2d 81, 230 N.W.2d 133 (1975). Following those cases, we likewise refuse to apply the doctrine to bar our review of these two convictions.

## THE ARMED ROBBERY CONVICTION

The defendant argues that he could not be convicted of armed robbery under sec. 943.32(1)(b) and (2), Stats., because he believed he was entitled to the money and that he had the right to reclaim it. He claims his belief that he was recovering his own money when he took the money from Funderburg at gunpoint negates the requisite intent to steal. This specific issue was considered by this court in *Edwards v. State,* 49 Wis.2d 105, 113–14, 181 N.W.2d 383 (1970) :

"We think the intent to steal is present when one at gunpoint or by force secures specific money which does not belong to him in order to apply it by such self-help to a debt owed to him. In sec. 943.32, Stats., robbery is defined as whoever, with intent to steal, takes property from the person or presence of the owner by either force or threat thereof with intent to overcome his physical resistance. . . . Unless the accused can trace his owner-

ship to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket and it is theft to take it from his possession with intention to permanently deprive him of its possession regardless of what other motive or intention the accused has.

"The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. . . . The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account?"

The defendant argues that the record clearly demonstrates that the money given him by Funderburg was the same money that the defendant lost in the dice game. The defendant told Funderburg that he lost $50, although he later claimed that Funderburg won $65 from him; and he ultimately recovered all the money Funderburg had in his pocket, between $50 and $60. This similarity of the amounts of money lost and taken and the short span of time between these two events establishes, according to the defendant's argument, that this was the same money.

The state argues that the evidence was sufficient to show beyond a reasonable doubt that the bills the defendant took at gunpoint were not his. The record shows that the dice game involved at least eight players, and most of them lost money to Funderburg. The state points out that there is no indication that Funderburg's winnings were in any way segregated but instead were probably intermingled in Funderburg's hands and pockets. In view of this evidence the state contends that there is at most a mere possibility that the bills Funderburg pulled from his pocket were the very bills the de-

fendant had lost, which does not raise a reasonable doubt as to the defendant's guilt.

On appeal the standard of review is "whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State,* 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966). The evidence does not have to remove every possibility before a conviction can be sustained. *State v. Eberhardt,* 40 Wis.2d 175, 178, 161 N.W.2d 287 (1968). Evidence for conviction need only exclude every reasonable hypothesis of innocence, not every possibility. *Taylor v. State,* 74 Wis.2d 255, 246 N.W.2d 516 (1976); *State v. Shaw,* 58 Wis.2d 25, 205 N.W.2d 132 (1973).

The defendant has shown only that approximately the same amounts of money were lost in the dice game and taken at gunpoint. While this makes it possible that the exact same bills were lost and taken, this does not seem to be a reasonable hypothesis of innocence in view of all the other testimony. Thus the trier of facts could reasonably find the defendant guilty beyond a reasonable doubt.

## THE ATTEMPTED MURDER CONVICTION

The defendant contends that his conviction for both the murder of Willie Wortham and the attempted murder of Kenny Simmons exceeds statutory and constitutional limits. Sec. 939.66, Stats., provides in part:

"Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

"...

"(4) An attempt in violation of s. 939.32 to commit the crime charged; . . ."

The defendant contends that, because all the elements of attempted first-degree murder are included in first-degree murder, conviction for both is precluded by sec. 939.66(1), Stats. Under the first-degree murder statute, one is guilty if he or she "causes the death of another human being with intent to kill that person or aner." Sec. 940.01(1). To prove attempted first-degree murder, the state must establish:

"(1) A specific intent to take the life of another human being; and (2) an unequivocal act which, except for the intervention of some extraneous factor, would have resulted in the death of that individual."

*State v. Schenk*, 53 Wis.2d 327, 332, 193 N.W.2d 26 (1972). The defendant concedes that an attempted murder requires the showing of an extraneous factor which prevented the homicide but argues that in this instance the extraneous factor, missing Simmons and killing Wortham, was a part of the homicide of Wortham.

However, the killing of Wortham did not constitute the extraneous factor which must be proved to sustain a conviction of attempted first-degree murder of Simmons. The killing of Wortham did not cause the defendant to fail in his efforts to kill Simmons. The extraneous factor which caused the failure may have been several things, including the 20-foot distance between the defendant and Simmons, or the defendant's inaccurate aim due to his spinning around to face Simmons. While in this case

the extraneous factor may have been a factor in Wortham's death, Wortham's death need not be proven to convict defendant of the attempted murder of Simmons.

The defendant alternatively argues that, under the facts of this case, the defendant's intent to kill Simmons was a necessary element of the first-degree murder of Wortham, and as such the attempt to kill Simmons was part of the acts which constituted the first-degree murder of Wortham. This ignores the element of failure caused by an extraneous factor which is required for an attempt conviction but need not be shown to prove Wortham's murder. This argument also fails because, like the defendant's first argument under sec. 939.66(1), Stats., it looks to the particular facts of the case in order to determine whether the lesser offense is included in the latter. The test for a lesser included offense is not the peculiar factual nature of a single defendant's crime, but it is whether the lesser offense is statutorily within the greater. *State v. Smith,* 55 Wis.2d 304, 310, 198 N.W. 2d 630 (1972); *Geitner v. State,* 59 Wis.2d 128, 132, 207 N.W.2d 837 (1973).

The defendant next argues that his conviction for both murder and attempted murder was barred by secs. 939.-66(4) and 939.72(3), Stats. Sec. 939.66(4) defines an included crime as "an attempt in violation of s. 939.32 to commit the crime charged." Sec. 939.72(3) provides:

"939.72. No conviction of both inchoate and completed crime. A person shall not be convicted under both: . . .
"(3) Section 939.32 for attempt and the section defining the completed crime."

The bar in 939.72(3) follows from the proposition that it is improper to convict for crimes based on the same con-

duct unless each requires proof of a fact not required by the other. *See:* Remington and Joseph, *Charging, Convicting, and Sentencing The Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 546. Since an attempt does require proof of a fact (some extraneous act preventing the completed crime) not required for conviction of the completed crime, conviction for both is proper under sec. 939.72(3), Stats., where there are two victims. Moreover, secs. 939.66(4) and 939.72(3), along with sec. 939.-66(1), have no application to this case because there were two different victims.

The defendant maintains that because of the "transfer of intent" which is part of the first-degree murder statute, the attempt to kill Simmons but the actual killing of Wortham are part of the same act and part of the same crime of the first-degree murder of Wortham. While penal statutes are generally construed strictly to safeguard a defendant's rights, "the rule of strict construction is not violated by taking the common-sense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it." *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600, 13 N.W.2d 53 (1944). As a general rule when different victims are involved, there is a corresponding number of distinct crimes. *See, e.g., State v. Gratz,* 254 Or. 474, 476–77, 461 P.2d 829, 830 (1969). The statutes cited by the defendant address the situation in which there is only one victim and quite sensibly preclude conviction for both the successful and the attempted murder of that same victim. In such a case, the attempted murder truly is the inchoate form of the murder. It is anomalous to contend that the attempted murder of Simmons is actually the murder of Wortham in inchoate form. Taking a commonsense view, we conclude this argument is without merit.

Finally, the defendant argues that his conviction for both the completed and attempted murder constitutes double jeopardy, in violation of art. I, sec. 8, of the Wisconsin Constitution which provides that "no person *for the same offense* shall be put twice in jeopardy of punishment." [Emphasis added.] The double jeopardy provision of the United States Constitution applies to the states through the Fourteenth Amendment. *Benton v. Maryland, supra.* The application of the state and federal constitutional double jeopardy provision is the same:

> " 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' "

*State v. Martin,* 229 Wis. 644, 652, 282 N.W. 107 (1939); *Schroeder v. State,* 222 Wis. 251, 260, 267 N.W. 899 (1936); *State v. Brooks,* 215 Wis. 134, 140, 254 N.W. 374 (1934); *Blockburger v. United States,* 284 U.S. 299, 304 (1932); all quoting with approval from *Morey v. Commonwealth,* 108 Mass. 433 (1871).

Applying that test there are two separate offenses here, and the defendant may be convicted of each. The attempted murder of Simmons requires proof of "the intervention of another person or some other extraneous factor," which is a fact not necessary for conviction of the murder of Wortham. Likewise, the murder charge requires proof of the death of Wortham, *Winn v. The State,* 82 Wis. 571, 575–76, 52 N.W. 775 (1892), an element not required to prove attempted murder. Each statute requires proof of an additional fact which the other does not, and conviction for both of them does not constitute double jeopardy.

The defendant's reliance on *State v. Carlson,* 5 Wis.2d 595, 93 N.W.2d 354 (1958), is misplaced. In *Carlson* this court said that a person could not be convicted of both third-degree murder and the underlying felony because "[t]he information charging defendant with third-degree murder in effect charged the arson [the underlying felony] and alleged the causing of the death as an additional element affecting the maximum sentence." *Id.* at 608. All the elements of the underlying felony must be shown in order to establish third-degree murder. Consequently, double jeopardy barred a separate conviction for the felony. But in the case at hand, the murder charge did not require proof of all the elements of the attempted murder charge. The intervention of some other extraneous factor is an element necessary to prove the attempted murder of Simmons but is not required to prove the murder of Wortham. They constitute separate offenses which could be separately prosecuted.

Under the facts of this case, we find no merit to the multiple arguments of the defendant.

*By the Court.*—Judgment affirmed.