STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard L. KITTILSTAD, Defendant-Appellant.†

Court of Appeals

*No. 98–1456–CR. Submitted on briefs September 15, 1998.—Decided September 29, 1998.*

(Also reported in 585 N.W.2d 925.)

†Petition to review granted.

204

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Richard L. Wachowski* and *Wachowski, Johnson & Cohen, S.C.* of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J.   Richard Kittilstad appeals an order denying his motion to dismiss the charges contained in the information. On appeal, Kittilstad claims that the trial court erred by holding that there was sufficient evidence presented at the preliminary hearing to conclude that Kittilstad probably solicited prostitution under § 944.32, STATS., and, further, that he probably

committed extortion under § 943.30(1), STATS. We reject Kittilstad's assertions and affirm the order.

Kittilstad was charged with four counts of soliciting prostitution under § 944.32, STATS., and one count of extortion under § 943.30(1), STATS. The information is based on the testimony of five foreign exchange students at the preliminary hearing: Samuel Urriola-Perea, Fransisco Sanjur, Edgar Bernal, Marcelino Alonzo, and Julio Cedino. A summary of their testimony is as follows. Kittilstad, a Lutheran minister, sponsored the students to travel to the Eau Claire area from Panama in order to pursue an education at the Chippewa Valley Technical College. Shortly after arrival, Kittilstad would inquire into the student's sexual history. Kittilstad offered each student either money or deductions in his phone bill if he would bring home different "girls" and have sex with them in Kittilstad's presence. Kittilstad also threatened Cedino that if he did not bring home a girl and have sex with her, he would send Cedino back to Panama. While Kittilstad continually made these requests, none of the students obliged him.

On a motion to dismiss the charges, Kittilstad argued that the evidence elicited at the preliminary hearing did not support (1) that he engaged in soliciting prostitution when he offered money to the students if they brought "girls" home and had sex with them and (2) that he engaged in extortion when he threatened to send Cedino back to Panama. Kittilstad appeals the trial court's denial of his motion.

■

The principal issue on appeal is whether sufficient evidence was adduced at the preliminary hearing to support a bindover as to the counts alleged in the information. The purpose of a preliminary hearing is to

determine if there is probable cause to believe the defendant committed a felony. *State v. Koch*, 175 Wis. 2d 684, 703–04, 499 N.W.2d 152, 162 (1993). If the court finds probable cause, it must bind the defendant over for trial. *Id*. at 704, 499 N.W.2d at 162.

■

"The probable cause that is required for a bindover is greater than that required for arrest, but guilt beyond a reasonable doubt need not be proven." *Id*. At the preliminary hearing, the judge's role is to "determine whether the facts and reasonable inferences that may be drawn from them support the conclusion that the defendant probably committed a felony." *Id*. The judge is not to weigh the evidence or choose between conflicting facts or inferences. *Id*. Probable cause will exist when there is a plausible account of the defendant's commission of a felony. *Id*. On review, our role is to search the record to determine if there is any substantial ground based upon competent evidence to support the circuit court's decision. *State v. Sorenson*, 143 Wis. 2d 226, 251, 421 N.W.2d 77, 87 (1988).

Kittilstad first argues that the evidence at the preliminary hearing does not support the charges of soliciting prostitution under § 944.32, STATS., which states: "Except as provided under s. 948.08, whoever intentionally solicits or causes any person to practice prostitution or establishes any person in a place of prostitution is guilty of a class D felony." Kittilstad concedes that sufficient evidence was presented at the preliminary hearing to establish that he solicited the students. Kittilstad asserts, however, that the evidence did not establish that he solicited the students to "practice prostitution." Specifically, Kittilstad claims that the State was required under the elements of "prostitution" to offer evidence that he solicited the students to

have sex with a "paying customer" or as a "paying customer." He contends that because the women would not be paying the students for sex, or vice versa, he was not soliciting prostitution. Kittilstad further argues that the evidence was insufficient to show that he solicited the students to "practice" prostitution, in that it fails to show that there would be continual or ongoing activity between the parties.

To determine whether Kittilstad's actions fit into the elements of § 944.32, STATS., we are required to engage in statutory construction. Statutory interpretation presents a question of law. *State v. Szulczewski*, 216 Wis. 2d 494, 498, 574 N.W.2d 660, 662 (1998). Our review of a question of law is de novo, independent from the trial court. *Id.* The purpose of statutory interpretation is to discern the intent of the legislature. *State ex rel. Reiman v. Circuit Court*, 214 Wis. 2d 604, 612, 571 Wis. 2d 385, 387 (1997). We must first look to the plain language of the statute. *Id.* If the language of the statute unambiguously sets forth the intent of the legislature, we will apply its ordinary and accepted meaning to the facts before it; we will not look beyond the statutory language to ascertain its meaning. *Id.* at 612–13, 571 N.W.2d at 387–88. We must look to the common sense meaning of the statute to avoid unreasonable and absurd results. *State v. Keith*, 216 Wis. 2d 61, 70, 573 N.W.2d 888, 893 (Ct. App. 1997).

Kittilstad first claims that the preliminary hearing evidence did not establish that he probably solicited the students to engage in "prostitution." We must therefore determine whether the testimony corresponds to any of the definitions of prostitution provided in § 944.30, STATS.:

210

Any person who intentionally does any of the following is guilty of a Class A misdemeanor:

(1) Has or offers to have or requests to have nonmarital sexual intercourse for anything of value.

(2) Commits or offers to commit or requests to commit an act of sexual gratification, in public or in private, involving the sex organ of one person and the mouth or anus of another for anything of value.

(3) Is an inmate of a place of prostitution.

(4) Masturbates a person or offers to masturbate a person or requests to be masturbated by a person for anything of value.

(5) Commits or offers to commit or requests to commit an act of sexual contact for anything of value.

Section 944.30(1) unambiguously criminalizes practicing nonmarital intercourse for anything of value. Nothing in the statute requires that the exchange of sexual intercourse for value be between the persons involved in the nonmarital act.[1] Specifically, nothing

---

[1] To interpret the statute any other way would create absurd and unreasonable results by excluding circumstances that fit comfortably within the concept of soliciting prostitution. *See State v. Keith*, 216 Wis. 2d 61, 70, 573 N.W.2d 888, 893 (Ct. App. 1997). For example, it would exclude the father who hires a prostitute for his son or the businessman who hires prostitutes for his clients. As long as one of the individuals engaging in the sexual act is receiving compensation for the act, the elements of the statute are met.

Moreover, while unnecessary to our analysis, we note that the broad definition the legislature supplied to the term "prostitution" is consistent with its intent in enacting § 944.32, STATS.: to curtail the recruitment of males and females into the practice of providing sex for a fee. *State v. Huff*, 123 Wis. 2d 397, 405, 367

in the statute implies that the students either pay or receive money from the women in exchange for sex. *See State v. McCollum*, 159 Wis. 2d 184, 200, 464 N.W.2d 44, 50 (Ct. App. 1990).

■

The students testified that Kittilstad requested that they engage in nonmarital sex[2] with "girls" for something of value, either money or a reduction of a phone debt. We conclude that the evidence supports the conclusion that Kittilstad probably solicited the students to engage in "prostitution," as that term is plainly and broadly defined. Kittilstad's alleged actions fall within the plain and broad meaning of § 944.30(1), STATS. As long as someone compensates another for engaging in nonmarital sex, the elements of prostitution are met.

■

Kittilstad next claims that the evidence was insufficient to show he solicited the students to "practice" prostitution under § 944.32, STATS. "According to *Webster's Third New International Dictionary* 1780 (1976),

---

N.W.2d 226, 230 (Ct. App. 1995). The focus is on the actions of the recruiter or solicitor and does not depend upon whether the solicitor wants the recruit to have sex with either himself or a third party. *Id.*

[2] Kittilstad's alleged request that the students "have sex" is sufficient to support the inference for purposes of a preliminary hearing that he was soliciting them to engage in intercourse. One of the students testified that the amount Kittilstad offered to pay depended upon the types of sex the student would perform with his sexual partner. In any event, § 944.30(5), STATS., defines prostitution as committing an act of *sexual contact* for value. It is a reasonable inference that "having sex" would involve sexual contact. Apart from the nature of the sex act, in all other respects the analysis of the definitions in § 944.30(1) and (5) are identical.

'practice' means 'to do or perform often, customarily, or habitually.' Section 944.32, Stats., therefore, proscribes solicitation of ongoing criminal conduct." *State v. Johnson*, 108 Wis. 2d 703, 711–12, 324 N.W.2d 447, 451 (Ct. App. 1982). We conclude that sufficient evidence was presented at the preliminary hearing to establish that Kittilstad probably solicited "ongoing" acts of prostitution. The students testified that Kittilstad continually requested them to bring home different "girls," which supports the reasonable inference that Kittilstad wanted the students to engage in sex acts on multiple, continual occasions. Moreover, one of the students testified that Kittilstad offered to reduce his phone bill if he would let Kittilstad view him having sex with fourteen different women. Another student testified that Kittilstad offered to discount his phone bill each time the student brought a different girl home. This evidence evinces Kittilstad's intent that the students engage in "ongoing" acts of prostitution.

Finally, Kittilstad argues that his alleged threat to send a student back to Panama if he did not bring girls home does not constitute extortion under § 943.30(1), STATS. Section 943.30(1) provides:

> Whoever, either verbally or by any written or printed communication, maliciously threatens to accuse or accuses another of any crime or offense, or threatens to accuse or accuses another of any crime or offense, or threatens or commits any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will

or omit to do any lawful act, is guilty of a Class D felony.

Specifically, Kittilstad asserts that a threat to interfere with a person's education does not constitute a threat to commit injury to "the person, property, business, profession, calling or trade, or the profits or income of any business, profession, calling or trade of another . . . ."

The State claims that a threat to one's education is necessarily a threat to one's profession or calling. To determine whether the legislature intended extortion to include a threat to one's education, we must again engage in statutory interpretation. The statute fails to define the word "profession." If a term is left undefined, we must construe the word according to its common and approved usage, which "may be established by resort to dictionary definitions." *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45, 50 (1995). The term "profession" is defined as

> a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of public service.

WEBSTER'S THIRD NEW INT'L DICTIONARY 1811 (unabr. 1993). A "profession" thus requires "intensive preparation" and "instruction in skills." "Education" is defined as "the act or process of providing with knowledge,

skill, competence, or usu. desirable qualities of behavior or character or of being so provided esp. by a formal course of study, instruction or training." *Id*. at 723. It follows that a prerequisite for a profession is an education, which provides an instruction in skills. An education is so inextricably connected to obtaining a profession that a threat to the former necessarily constitutes a threat to the latter. We conclude that a threat to one's education constitutes a threat to one's profession. Accordingly, there was sufficient evidence presented at the preliminary hearing to show that Kittilstad probably engaged in extortion.

*By the Court.*—Order affirmed.