STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard L. KITTILSTAD, Defendant-Appellant-Petitioner.

Supreme Court

*No. 98–1456–CR. Oral argument October 5, 1999.—Decided December 17, 1999.*

(Also reported in 603 N.W.2d 732.)

For the defendant-appellant-petitioner there were briefs by *Richard L. Wachowski* and *Wachowski &*

*Johnson, S.C.*, Eau Claire and oral argument by *Richard L. Wachowski*.

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien*, assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J. The defendant, Richard L. Kittilstad, seeks review of a published decision of the court of appeals, *State v. Kittilstad*, 222 Wis. 2d 204, 585 N.W.2d 925 (Ct. App. 1998), which affirmed, on interlocutory appeal, the circuit court's denial of his motion challenging the bindover and the charges in the information.

¶ 2. The State has charged the defendant with four counts of soliciting prostitution under Wis. Stat. § 944.32 (1995–96)[1] and one count of extortion under Wis. Stat. § 943.30(1). The charges are based on the testimony of five Panamanian students whom the defendant sponsored to come to the United States. At the preliminary examination, the students testified that the defendant repeatedly offered to pay them if they would bring women back to his house where they were staying, have sex with them, and allow him to watch. One student testified that the defendant threatened to throw him out of his home and interfere with his study program if the student refused his requests. The defendant argues that this evidence, even if true, cannot establish solicitation of prostitution or extortion as those offenses are defined in the Wisconsin Statutes.

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

¶ 3. Like the circuit court and the court of appeals, we conclude that the statutes the defendant is charged with violating encompass the conduct alleged at the preliminary examination. We affirm the decision of the court of appeals.

## I.

¶ 4. In November 1997 police investigated allegations against the defendant, Richard L. Kittilstad, a Lutheran minister who had sponsored several young Panamanian men in their studies at Chippewa Valley Technical College. A criminal complaint was filed charging him with six counts of soliciting prostitution contrary to Wis. Stat. § 944.32. Before the preliminary examination, the defendant moved to dismiss the complaint on the grounds that it was defective because the facts stated in it failed to support the charges. Judge Eric J. Wahl reserved his decision on the motion until after the preliminary hearing.

¶ 5. The preliminary hearing took place on January 20, 1998. The State presented the testimony of five students.

¶ 6. The first witness testified that he arranged to come to the United States as a student and live with the defendant in Augusta, Wisconsin, arriving on May 9, 1996. The day after he arrived, the defendant began talking to him about sex. After a couple of months, the defendant began offering the witness money if he would bring a woman to the home, have sex with her, and let him watch. The defendant offered to pay him different amounts of money, between thirty and eighty dollars, depending on the particular sex acts involved. Once, after the witness ran up a large phone bill, the defendant said that the only way to pay it off would be to bring fourteen different women to the house during

the next month, have sex with each of them, and let the defendant watch. According to the witness, the defendant made these requests repeatedly, once a week or so, over an eighteen-month period. The witness moved out of the defendant's home in November 1997.

¶ 7. The second witness gave similar testimony. He testified about one particular incident in which he wanted to take a martial arts course. He said that the defendant offered to pay for the course if the witness would bring a woman home and have sex with her in the room above the defendant's room. At other times, the defendant offered to reduce the witness's phone bill in exchange for allowing the defendant to watch him have sex with women. The witness reported that the defendant made more than ten similar requests. The witness complained to a counselor at his school about the requests sometime in 1997. Since moving out of the defendant's home in November 1997 he has been supported by the defendant's church.

¶ 8. The next witness also gave similar testimony. A few months after his arrival at the defendant's home in May 1995, the defendant began offering him money, clothes, or favors, such as the use of the defendant's car, if the witness would bring women to the house and have sex with them. He testified that "anytime I go out with a different woman he wanted me to bring that woman home." He estimated that the defendant made more than five such requests, until the time he moved out of the home in the spring of 1997.

¶ 9. The fourth witness, who arrived at the defendant's home in May 1996, gave substantially the same testimony. He reported that a few weeks after his arrival the defendant offered to pay him twenty to forty dollars if he would bring a woman home and have sex with her in the room above the defendant's room. The

251

defendant made many similar requests over the course of the next year, about twice a month on average. The witness moved out of the defendant's home in May 1997.

¶ 10. The last student to testify arrived in the United States in May 1996. He stated that about a week and a half after his arrival, the defendant told him that if he did not have sex with a woman at the house, the defendant would throw him out of the house and try to force him to leave school and return to Panama. The witness stated that over the course of the year, the defendant repeated this threat more than twenty-five times. The witness moved out in the spring of 1997.

¶ 11. The preliminary examination testimony is somewhat unclear as to whether this witness ultimately moved out of the defendant's home by his own choice or was kicked out. In response to the question "Why did you move out?" he answered, "Because I wasn't living comfortable hearing everytime about sex and accusing me and treating me like a deer in the woods in the hunting season." However, he later testified as follows:

> Q. (Continuing) Mr. Kittilstad didn't kick you out?
>
> A. He did.
>
> Q. He did or didn't?
>
> A. He did.
>
> Q. He did?
>
> A. Yeah.

Finally, in response to the question, "And do you know if he ever did anything to get you to go back to Panama?" he gave this response:

A: . . .I don't remember and I can't tell you any-
thing because when I move out of the house I did it
because he always keep pressuring me like
this. . .he'd say, you got to move out and your last
days, I don't remember whatever day that, in the
past.

Taken as a whole, the witness's testimony could sup-
port findings that the defendant repeatedly threatened
to expel him from his home, to interfere with his study
program, and to try to have him removed from the
United States if he refused to have sex with women in
the defendant's house. The witness testified that he
finally left the house as a result of these pressures.

¶ 12. After hearing this evidence and considering
the attorneys' arguments, Judge Wahl denied the
defendant's motion to dismiss the complaint. The
defendant promptly raised an identical challenge to the
bindover. The judge indicated that he would come to
the same conclusion, but because the district attorney
had informed the court that he intended to amend the
charges to include a count of extortion, the court
delayed decision on the bindover until after the filing of
the information.

¶ 13. On January 27, 1998, the district attorney
filed an information charging the defendant with four
counts of soliciting prostitution contrary to Wis. Stat.
§ 944.32 and one count of extortion contrary to Wis.
Stat. § 943.30(1).

¶ 14. The defendant filed a motion challenging
the bindover and the information. He argued that even
if true, the facts alleged do not constitute solicitation of
prostitution or extortion, and that therefore (1) the evi-
dence offered at the preliminary examination was
insufficient to bind him over for trial because it did not
support a finding that he had probably committed a

felony, and (2) the charges in the information were not supported by the evidence.

¶ 15. Judge Benjamin D. Proctor[2] denied the motion, holding that under a reasonable interpretation of the statutes, the case law, and application of standard rules of statutory construction, the solicitation of prostitution statute and the extortion statute encompassed the alleged conduct. Specifically, Judge Proctor concluded that the state's allegations, if proven, would constitute a violation of Wis. Stat. § 944.32 because the defendant intentionally solicited the students to engage in sex for money or other things of value. The court concluded that the contrary result urged by the defendant is absurd and should be avoided.

¶ 16. Similarly, the court concluded that the extortion statute, Wis. Stat. § 943.30(1), applied to the defendant's alleged threats against one of the students. Wisconsin Stat. § 943.30(1) prohibits anyone from threatening to injure the person, property, or business of another with the intent to compel the person to do some act against the person's will. "Property or person of another" has been interpreted broadly to include, among other things, an interest in a lawsuit. The court therefore decided that the statute extends to threats to withhold room and board or the opportunity for education.

¶ 17. The defendant requested permission to appeal Judge Proctor's nonfinal order rejecting his challenge to the bindover and the information. The court of appeals granted permission and, on appeal, affirmed the circuit court. With regard to the solicitation of prostitution charges, the court of appeals

---

[2] The defendant requested substitution of a judge under Wis. Stat. § 971.20. Judge Benjamin D. Proctor was substituted for Judge Eric J. Wahl on January 30, 1998.

concluded that the defendant's alleged actions fell within the plain and broad meaning of the statute, and that the evidence was sufficient to establish that the defendant solicited the students to the "ongoing" practice of prostitution. *Kittilstad*, 222 Wis. 2d at 213. Likewise, the court concluded that the alleged threats fell under the extortion statute. Since education is a prerequisite for a profession, the court decided that a threat to a person's education is a threat to his or her "profession" under the statute. The defendant petitions this court for review of these decisions.

## II.

¶ 18. The defendant's motion to dismiss the charges against him arises as a challenge to the bindover decision and the information. In general, our review of a bindover determination is limited; we will affirm a decision to bind a defendant over for trial if the record contains any substantial ground based on competent evidence to support it. *State v. Koch*, 175 Wis. 2d 684, 704, 499 N.W.2d 152 (1993). Similarly, our review of the charges in an information is limited to the narrow question of "whether the district attorney abused his discretion in issuing a charge not within the confines of and 'wholly unrelated' to the testimony received at the preliminary examination." *State v. Hooper*, 101 Wis. 2d 517, 537, 305 N.W.2d 100 (1981).

¶ 19. However, in this case, the defendant's challenges to both the bindover and the information turn on questions of statutory construction. The defendant argues that, under proper interpretations of the solicitation of prostitution statute, Wis. Stat. § 944.32, and the extortion statute, Wis. Stat. § 943.30, the evidence

produced at the preliminary examination simply cannot support the charges.

¶ 20. Statutory interpretation is a question of law that we review independently. *State v. Cardenas-Hernandez*, 219 Wis. 2d .516, 538, 579 N.W.2d 678 (1998). Our goal in statutory interpretation is to determine and give effect to the legislature's intent. *Id.* To determine the legislature's intent, we begin by looking at the plain language of the statute. *Id.* If the plain language is unambiguous, we apply the ordinary and accepted meaning of the language to the facts before us. *Id.*

### III.

¶ 21. The first issue is whether the facts alleged at the preliminary examination constituted solicitation of prostitution under Wis. Stat. § 944.32. The statute states in relevant part: "whoever intentionally solicits or causes any person to practice prostitution or establishes any person in a place of prostitution is guilty of a Class D felony." There is no allegation that the defendant actually caused any person to practice prostitution, or that he attempted to establish any person in a place of prostitution. Thus, the language that must be interpreted is "whoever intentionally solicits. . .any person to practice prostitution. . .is guilty of a Class D felony." Wis. Stat. § 944.32.

¶ 22. The court of appeals has interpreted this language in *State v. Johnson*, 108 Wis. 2d 703, 324 N.W.2d 447 (Ct. App. 1982), and *State v. Huff*, 123 Wis. 2d 397, 367 N.W.2d 226 (Ct. App. 1985). The defendants in those cases, like the defendant in the case at hand, argued that their alleged conduct did not constitute solicitation of prostitution under the statute.

¶ 23. In *State v. Johnson*, the defendant challenged his conviction on constitutional grounds as well as on the ground that the evidence was insufficient to support his conviction. *Johnson*, 108 Wis. 2d at 706. The defendant had informed a female acquaintance that he could help train her for a modeling career and asked her to accompany him to an interview. *Id.* at 706–07. The interview turned into a photography session in which he requested that she pose for nude photographs. *Id.* He then told her that although she could make $100 an hour as a model, she could make $200 an hour by performing sex acts with photographers. *Id.* When the woman expressed disinterest in such activity, he attempted to overcome her objections by explaining that he "was not asking her to stand on the corner," and that "the clients did not need to know her real name." *Id.* The court of appeals rejected the defendant's constitutional arguments and also determined that the evidence supported the defendant's conviction. *Id.* at 710–12. The court specifically determined that the testimony "that [the defendant] urged [his acquaintance] to use her body for profit by engaging in sexual acts with men at $200 a session" covered every element of § 944.32. *Id.* at 712.

¶ 24. In *Huff*, the defendant was charged with several counts of solicitation of prostitution under Wis. Stat. § 944.32, based on allegations that he had asked women to have sex with him for money. *Huff*, 123 Wis. 2d at 400. The state conceded that most of these counts should have been charged as misdemeanor prostitution, but argued that with regard to one of the counts there was sufficient evidence to establish that the defendant solicited a woman to engage in prostitution on an ongoing basis. *Id.* at 407. The court agreed and sustained that count. *Id.* In doing so, the court rejected

the defendant's argument that Wis. Stat. § 944.32 does not apply when "the solicitor is also the person benefiting from the prostitute's services" because the court concluded that the statute focuses on whether solicitation occurred and not on whether the solicitation was for an act to be performed with a third party. *Id.* at 404. The court also rejected the argument that the statute does not apply if the solicitor does not receive any commercial gain, because "monetary gain is not an element of the crime." *Id.* at 405.

¶ 25. We now must apply the language of Wis. Stat. § 944.32 to the case at hand. The defendant concedes that the evidence presented at the preliminary examination was sufficient to establish that he "solicited" the students. *Kittilstad*, 222 Wis. 2d at 209. His argument is that this solicitation, even if true, does not constitute solicitation "to practice prostitution." He contends that interpreting § 944.32 so as to encompass the alleged conduct does not serve the statute's purpose "to curtail the recruitment of males and females into the practice of providing sex for a fee," *Huff*, 123 Wis. 2d at 405, because the evidence establishes only that the defendant was attempting to facilitate voyeurism, not the providing of sex for a fee. He also argues that the statutory definition of "prostitution" is not broad enough to extend to the alleged facts because one of the people engaged in the sex act would not be aware of the commercial nature of the transaction and would not be exchanging sex for payment.

¶ 26. We start by examining whether the acts the defendant allegedly solicited were "prostitution." Wisconsin Stat. § 944.30 is entitled "Prostitution" but does not explicitly define the term, rather the statute sets forth a list of conduct as constituting prostitution. The statute provides:

258

Any person who intentionally does any of the following is guilty of a Class A misdemeanor:

**(1)** Has or offers to have or requests to have nonmarital sexual intercourse for anything of value.

**(2)** Commits or offers to commit or requests to commit an act of sexual gratification, in public or in private, involving the sex organ of one person and the mouth or anus of another for anything of value.

**(3)** Is an inmate in a place of prostitution.

**(4)** Masturbates a person or offers to masturbate a person or requests to be masturbated by a person for anything of value.

**(5)** Commits or offers to commit or requests to commit an act of sexual contact for anything of value.

If the activity that the defendant allegedly solicited from the students meets any of these definitions, then he was soliciting "prostitution" in violation of Wis. Stat. § 944.32.

¶ 27. The first four witnesses all testified that the defendant asked them to "have sex with" women in his house in exchange for money, reduction in their phone bills, or other things of value. It is reasonable to infer that to "have sex" would involve having nonmarital sexual intercourse as prohibited in Wis. Stat. § 944.30(1), or committing an act of sexual contact as prohibited in § 944.30(5). Thus, had any of the students complied with the defendant's requests, the student would have intentionally committed acts prohibited by § 944.30 in exchange for payment from the defendant and therefore would have engaged in prostitution under the plain language of § 944.30.

¶ 28. The defendant's contrary interpretation of the statute would exclude not only the admittedly unusual situation alleged in this case but also other, more

typical situations. For example, a pimp who solicits someone to engage in sex acts with individuals who then pay the pimp could not be prosecuted for solicitation of prostitution. Similarly, as the court of appeals pointed out, under the defendant's interpretation Wis. Stat. § 944.32 would not apply to a situation in which a father pays someone to have sex with his son or a businessman pays someone to have sex with his client. *Kittilstad*, 222 Wis. 2d at 211 n.1.

¶ 29. The exclusion of these situations from the reach of the broad language of Wis. Stat. § 944.32 would be unreasonable. This court seeks to avoid interpretations that produce unreasonable results. *DeMars v. LaPour*, 123 Wis. 2d 366, 372, 366 N.W.2d 891 (1985). The defendant contends that these examples are distinguishable because the father or businessman would be engaging in a commercial transaction with a "prostitute," someone knowingly engaged in prostitution and aware that the contemplated sexual activity is part of a commercial transaction.

¶ 30. The defendant's argument disregards the fact that Wis. Stat. § 944.30 does not define prostitution in terms of whether or not someone is a "prostitute." The statute prohibits, among other things, having, offering to have, or requesting to have sex in exchange for anything of value. It looks to the individual mental state of the particular person who is alleged to have engaged in acts constituting prostitution and not to whether the acts were a "commercial transaction." Thus, any student who acquiesced to the defendant's alleged requests would have been engaged in prostitution within the meaning of the statute. Whether the woman involved in the contemplated sexual activity would be aware of the underlying

commercial transaction is irrelevant to whether the student was engaged in prostitution, or whether the solicitor was engaged in solicitation. Likewise, in the father-son or businessman-client examples, whether or not the son or client is aware that the person with whom he is engaging in sexual contact is doing so for payment, the person who receives payment in exchange for sex is engaged in prostitution, and the father or businessman has solicited prostitution.[3] These situations therefore are not distinguishable.

██

¶ 31. The defendant in *Huff* argued essentially the reverse of the defendant's argument in this case. He contended that Wis. Stat. § 944.32 *only* applies to situations in which the recruiter solicits someone to have sex with a third party. *Huff*, 123 Wis. 2d at 403–04. *Huff*'s reasoning in rejecting that argument also applies here. Because the statute's goal is to stop the recruitment of people into the practice of providing sex in exchange for something of value, "the focus is on the recruiter or solicitor and does not hinge on whether the solicitor wants the recruit to have sex with some third party." *Id.* at 405.

¶ 32. The defendant's argument that our interpretation does not serve the purpose of the solicitation of prostitution statute also fails to follow the language of the statute itself. The solicitation statute explicitly prohibits the recruitment of people into the practice of "prostitution." Although it may be true that the crime of prostitution more typically involves the direct and

---

[3] Of course, the son, the businessman, or a woman with whom a student had sex would have also engaged in prostitution under Wis. Stat. § 944.30 if he or she had intentionally had sex, offered to have sex, or requested to have sex in exchange for anything of value.

knowing exchange of money by one person in return for sex from the other person, the plain language of Wis. Stat. § 944.30 extends to other situations. The solicitation statute is intended to prohibit the recruitment of people into the practice of any of the activities prohibited by the prostitution statute.

¶ 33. Citing *State v. Rabe*, 96 Wis. 2d 48, 291 N.W.2d 809 (1980), the defendant also contends that we should construe the definition of prostitution strictly because Wis. Stat. § 944.30 is a penal statute. The rule of strict construction of penal statutes does not apply when the legislature's intent is unambiguous, or when strict construction goes against the legislature's purpose. *Rabe*, 96 Wis. 2d at 70. We agree that the unusual facts of this case approach the outer reaches of the conduct contemplated by the statute. However, we have long recognized that the rule of strict construction of penal statutes is not a "rule of general or universal application;. . . . Sometimes a strict and sometimes a liberal construction is required, even in respect to a penal law, because the dominating purpose of all construction is to carry out the legislative purpose." *State v. Boliski*, 156 Wis. 78, 81, 145 N.W. 368 (1914). In interpreting a statute, our ultimate aim is to give effect to the legislature's intent, and rules of statutory interpretation cannot be used when they defeat the purpose of the statute. *State v. Hopkins*, 168 Wis. 2d 802, 814–15, 484 N.W.2d 549 (1992).

¶ 34. Wisconsin Stat. § 944.30 is not ambiguous as applied to the facts alleged in this case. We conclude that the definition of prostitution in § 944.30 plainly encompasses the conduct the defendant is accused of soliciting from the students.

¶ 35. Having concluded that the conduct the defendant allegedly solicited from the students would have constituted "prostitution," we next must determine whether the evidence is sufficient to establish that he solicited the students to "practice" prostitution, as Wis. Stat. § 944.32 requires. To "practice" prostitution means to engage in repeated, ongoing acts of prostitution. *Johnson*, 108 Wis. 2d at 712; *Huff*, 123 Wis. 2d at 407.

¶ 36. None of the testimony at the preliminary examination suggested that the defendant asked each student to engage in only a single act of sex. To the contrary, each witness testified that over the course of many months the defendant repeatedly requested that he commit acts of prostitution. Furthermore, each witness clearly claimed that the requests were not for a single act of prostitution, but for multiple acts of prostitution.

¶ 37. The first witness testified in part that the defendant asked him to have sex with fourteen different women in the house over the course of a month. The second witness testified:

> A. I had the telephone bill. And he told me that each time I bring a girl at the house and have sex with her he was going to discount from the telephone bill.
>
> Q. He would reduce it somewhat?
>
> A. Yeah, reduce the amount each time.
>
> Q. Okay. So would it take bringing one girl over to get rid of the phone bill or more than one?
>
> A. No, sir, more than one.

Similarly, the third witness gave this testimony:

Q. All right. When he was doing it, did he give you, did he ever say how many women he wanted you to do this with?

A. Different womens. . . .

Q. What did he say about that?

A. Well, he wants, he want me to go out with different womens so anytime I go out with a different woman he wanted me to bring that woman home.

Finally, the fourth witness testified "he ask, you know, about *girls*. You know,. . .if I can bring *girls* over to the house. . . ." (Emphasis added.)

¶ 38. For purposes of a bindover or the filing of a charge in an information, this testimony is a sufficient basis to support the conclusion that the defendant was requesting that the students engage in an ongoing *practice* of prostitution.

¶ 39. In sum, we hold that the defendant's alleged conduct falls within the definition of solicitation of prostitution under Wis. Stat. § 944.32.

### IV.

¶ 40. The second issue is whether the facts alleged by the final witness at the preliminary examination constitute extortion under Wis. Stat. § 943.30(1). The statute provides:

Whoever, either verbally or by any written or printed communication, maliciously threatens to accuse or accuses another of any crime or offense, or threatens or commits any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any pecuniary advantage whatever, or

with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act, is guilty of a Class D felony.

The information charges the defendant with extortion on the basis that he verbally threatened to commit injury to the person, property, or calling of another person with intent to compel that person to act against his will, in violation of this statute.

¶ 41. The charge is based on testimony given by the last witness at the preliminary examination. He gave the following testimony about the defendant's alleged threats against him:

Q. And what was it that happened during that conversation or what did he say to you?

A. He said something like if you don't have sex with anyone in this house that I can see, prove that you're having a sexual life, you got to, you got to go to Panama. You got to go back to Panama.

Q. Is this something you wanted to do?

A. Which one, go to Panama or have sex with somebody else and somebody can see me? .

Q. Let's start with going back to Panama. Did you want that?

A. I came for one, one reason, to study. And I didn't know that that was the surprise that I would have.

Q. Okay. Did you want to bring people to the house to have sex?

A. No, sir. . . .

Q. How many times [did he make such a request]?

A. Well, I remember. . .as far as in my house more than twenty-five times.

Q. And what would he say or ask or tell you during the more than twenty-five times?

A. You got to bring girls over to my house. Another way you got to come back to Panama. . . .

Q. And what did he tell you would happen if you did not do that?

A. Kick me out the house. And he do, he will do whatever he can do by himself to send me back to Panama and break my futures.

Q. If you didn't do what?

A. Have sex in his house and let him see. . . .

¶ 42. This testimony, if proven, provides probable cause to believe that the defendant made threats with intent to compel the witness to do acts against his will, and the defendant does not challenge the charge on these grounds. He argues only that the threats, even if proven, do not constitute any of the types of threats enumerated in Wis. Stat. § 943.30(1).

¶ 43. In an argument similar to the one addressed above with regard to the solicitation charges, the defendant cites *Rabe* for the contention that under the "rule of lenity," penal statutes are generally strictly construed. Under this rule of strict construction, he argues, the allegations do not show that he threatened "any injury to the person, property, business, profession, calling or trade, or the profits or income of any business, profession, calling or trade of another" under Wis. Stat. § 943.30(1).

¶ 44. Case law clarifies that the defendant is actually referring to two separate rules, the "rule of lenity" and the general rule subjecting penal statutes to strict construction so as to safeguard a defendant's

rights. The rule of lenity was developed in the federal courts and holds that where a criminal statute is ambiguous, it should be interpreted in a defendant's favor. *Rabe*, 96 Wis. 2d at 69. The rule of lenity is "echoed in the familiar Wisconsin rule that 'penal statutes are generally construed strictly to safeguard a defendant's rights.' " *Id.* at 70 (citing *Austin v. State*, 86 Wis. 2d 213, 223, 271 N.W.2d 668 (1978)).

¶ 45. As explained above, the rule of strict construction of penal statutes does not apply unless a statute is ambiguous, and it cannot be used to circumvent the purpose of the statute. Moreover, the rule " 'is not violated by taking the commonsense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it.' " *Austin*, 86 Wis. 2d at 223 (quoting *Zarnott v. Timken-Detroit Axle Co.*, 244 Wis. 596, 600, 13 N.W.2d 53 (1944)).

¶ 46. By enacting the language in question, "any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another," the legislature enumerated the specific types of interests that it intended to protect against extortive threats. While the legislature set forth specific interests, it began the list with the expansive phrase "any injury to," indicating that the protection of these interests should extend broadly to all injuries.

¶ 47. Courts have interpreted these interests in keeping with the legislature's broad intent. Thus, under a previous version of the extortion statute, this court determined that a threat to do injury to the "business" of another included a threat to call a strike. *Mayer v. State*, 222 Wis. 34, 37, 267 N.W. 290 (1936).

More recently, the court of appeals determined that "the term property as it is used in sec. 943.30(1), is broad enough to encompass an interest in a lawsuit." *State v. Manthey*, 169 Wis. 2d 673, 689, 487 N.W.2d 44 (Ct. App. 1992).

¶ 48. Like the court of appeals and the circuit court, we conclude that the language of Wis. Stat. § 943.30(1) is broad enough to encompass the threats alleged in this case.

¶ 49. According to the testimony, the defendant threatened to do everything he could to ensure that the student would have to end his studies in the United States and return to Panama if the student refused to have sex with women in his home. The court of appeals concluded that these were threats to the witness's "profession" under Wis. Stat. § 943.30(1). Looking to the dictionary definition of "profession," the court noted that an education is a prerequisite for a profession. *Kittilstad*, 222 Wis. 2d at 214–15. Because an education is therefore "inextricably connected to obtaining a profession," a threat to a person's education is a threat to his or her profession. *Id.* at 215.

¶ 50. Although we agree with this reasoning in principle, we conclude that it is even clearer that the alleged threats constitute threats to the witness's "calling or trade." A "calling" is defined as "[a]n occupation, a profession, or a career." *The American Heritage Dictionary of the English Language* 273 (3d ed. 1992). A "trade" is "[a]n occupation, especially one requiring skilled labor." *Id.* at 1897. Whatever his course of study, it is reasonable to infer that this witness was attending school to prepare for some sort of occupation or career. Proper education or training is necessary to any occupation. We therefore conclude that the alleged

threats to terminate the student's studies were threats to injure his "profession, calling or trade" within the scope of Wis. Stat. § 943.30(1).

¶ 51. In addition to these threats to terminate the student's studies, we conclude that the threats to end financial support may also have been threats to injure the student's "person, property, business, profession, calling or trade" under the unique circumstances of this case.

¶ 52. We base this conclusion in part on the testimony of the other students regarding the terms of their agreements to stay with the defendant. The second witness testified in some detail about his agreement with the defendant. He stated that the defendant agreed to bring him to the United States, pay for his schooling, and provide him with financial support. In return, he agreed to work for the defendant.

¶ 53. In light of this information from the second witness, it is reasonable to infer from the final witness's testimony that he was also working in exchange for at least part of his financial support. He stated, "I don't even know if he did something good for me because *everything that I did in his house. . .was my hard work in his farm*." (Emphasis added.) He also testified "[w]ell, he, if he buy me clothes I remember that was just one time. And he say *that is your money. . . .*," and "*the clothes that he buy me he·buy that clothes for the money that I work for him*." (Emphasis added.)

¶ 54. This testimony suggests that the witness may not have been completely dependent upon the defendant's charity, but may actually have been paying for at least part of his expenses by working for the defendant. The court could reasonably conclude that the witness had a property interest in the continuation

of that support that may have been recognizable in a lawsuit. At the least, the alleged threats were threats to interrupt his current occupation and means of supporting himself.

¶ 55. Moreover, since he was a foreign student without other connections in the United States, this student may have had nowhere else to go. Had these alleged threats actually been carried out, he might have been abandoned in the United States without any means of financial support. While this might not have resulted in a physical injury to his person, we conclude that it would constitute "any injury to the person" within the meaning of the statute. *See People v. Igaz*, 326 N.W.2d 420, 428 (Mich. Ct. App. 1982), *vacated on other grounds*, 341 N.W.2d 467 (Mich. 1983) (determining that "any injury to the person" in Michigan's similar extortion statute encompassed emotional injury).

¶ 56. We therefore conclude that the alleged threats to terminate financial support, if proven, could constitute threats to injure the "person, property, business, profession, calling or trade" of another person, in violation of Wis. Stat. § 943.30(1).

¶ 57. In sum, we hold that Wis. Stat. § 943.30(1) encompasses both the threats to interfere with the student's education and the threats to end his financial support in the United States.

V.

¶ 58. We determine that the evidence presented at the preliminary examination, if true, could establish that the defendant committed the crime of solicitation of prostitution as defined in Wis. Stat. § 944.32. We also determine that the evidence, if true, could estab-

lish that the defendant committed the crime of extortion as defined in Wis. Stat. § 943.30(1). Accordingly, we affirm the decision of the court of appeals.

 *By the Court.*—The decision of the court of appeals is affirmed.